## Ex parte Gustav Kiburg.

### June 7, 1881.

1. The city of St. Louis may lawfully imprison the defendant for non-payment of a fine assessed against him for violation of an ordinance prohibiting the sale of lottery tickets.

2. It is immaterial whether the action upon which the fine is assessed is in form a civil or a criminal proceeding.

3. The validity of an ordinance is not affected by the existence of a State law upon the same subject not inconsistent with it.

4. Defendants are not entitled to trial by jury in trials for petty offences cognizable in the police courts.

5. The authority conferred on the city of St. Louis to establish municipal courts authorized it to establish the First District Police Court.

6. The power to provide for a clerk and to define his duties is necessarily incidental to the power to establish a court.

7. The clerk of the police court may issue executions upon the judgments of his court.

APPLICATION for *habeas corpus*.
*Prisoner remanded.*
DAVID MURPHY, for the petitioner.
J. R. HARRIS, circuit attorney, *contra*.

LEWIS, P. J., delivered the opinion of the court.

The prisoner is detained in the city work-house under an execution and commitment from the First District Police Court of the city of St. Louis, issued upon a judgment against him for a fine of $200, on account of the violation of a city ordinance prohibiting the sale of lottery tickets. In this proceeding by *habeas corpus* he demands his release from imprisonment, upon many grounds which are pressed by his counsel with zeal and ingenuity at various stages, in a motion to quash the respondent's return, in objections to testimony, and in a final demurrer to the evidence sustaining the return. The several grounds of his claim will be considered without reference to the form of their presentation.

The proceeding before the police justice was begun by

the filing of a statement by the city attorney, which charged that the prisoner was indebted to the city of St. Louis in the sum of $500, for the violation of an ordinance of said city, which the statement proceeded to describe particularly by its number, title, subject-matter, and date of approval. The prisoner was brought in by summons, as in an action of debt, and the hearing resulted in a judgment against him for the sum of $200 and costs. Execution was issued, directed to the city marshal, and commanding him to levy the debt and costs of the goods and chattels of the defendant and, for want of sufficient property whereon to levy the same, "to deliver the body of said defendant into the custody of the superintendent of prisoners, who will convey said body to the city work-house of the city of St. Louis, the keeper whereof is hereby commanded to receive said defendant, safely keep," etc. It is urged for the prisoner that the whole proceeding was in the nature of a civil action for debt, and that bodily imprisonment in such a case is forbidden by constitutional and statutory law.

The State Constitution, Article II., section 16, provides " that imprisonment for debt shall not be allowed, except for the non-payment of fines and penalties imposed for violation of law." This, by implication, is conclusive that the proper legislative authority may direct imprisonment for the non-payment of fines and penalties, without a violation of the Constitution. It remains only to be seen whether such a legislative authority has sanctioned the imprisonment here complained of.

For certain purposes connected with the welfare and good order of local communities, legislative powers are conferred on municipal corporations, to be operative within their respective territorial limits. In the case of the city of St. Louis, these powers are derived directly from the State Constitution, through the action of the board of freeholders, and its ratification by the voters of the city. We need look no farther than the Charter, for a sufficient

authority given to the law-making agency of the corporation, to pass an ordinance providing for imprisonment as a consequence of the non-payment of a fine or penalty. By the tenth subdivision of section 26, Article III., of the City Charter, power is given to the Municipal Assembly " to impose, collect, and enforce fines, forfeitures, and penalties, for the breach of any city ordinance. Any offender who shall neglect or refuse to pay any fine, penalty, and costs that may have been imposed upon him or her, shall be committed to the work-house, or, in case of women, in such other place as for them may be provided, until such fine, penalty, and costs be fully paid : *Provided*, that no such imprisonment shall exceed six months for any one offence." By the fifth subdivision of the same section, power is given the Municipal Assembly by ordinance, " to license, regulate, tax, or suppress * * * lottery-ticket dealers." The legislative authority thus conferred was exercised in the passage of City Ordinance number 11322, approved March 15, 1880, which prohibited the selling, etc., of lottery tickets, as a misdemeanor, under penalty of a fine of not less than $10 nor more than $500 for each offence. The several links in the chain of authority for the detention of the prisoner because of his failure to pay the fine imposed upon him, are thus traceable back to the Constitution* of the State. The power thus derived is distinct, positive, and effectual. In the face of such a clear and emphatic authorization, it is idle to advance refined speculations over the distinction between civil actions and criminal procedures, and the propriety of personal detention, as incidental to one class, and not to the other. It is not of the least consequence whether we call the proceeding civil or criminal — an action for debt, or a prosecution for crime. The authority to hold the prisoner under the circumstances stated, comes from the highest possible source, and cannot be thus defeated by disquisition.

We are told, however, that if the proceeding against the

prisoner was a civil action, his imprisonment under it was
forbidden by the Revised Statutes, section 4041 : " No per-
son shall be arrested, held to bail, or imprisoned, on any
mesne process or execution founded upon any civil action
whatsoever." This provision first appeared in the Revised.
Statutes of 1855 (p. 853), and has ever since continued
to be the law. It has never been considered as having any
application to actions for fines and penalties imposed for·
violations of public prohibitory laws, whether State or·
municipal. Its origin and history confirm the interpreta-
tion which has confined its operation to private civil suits·
between citizens or corporations, or between citizens and
corporations ; that is, to such actions as are purely and ex-
clusively civil, in both form and purpose, without any admix-·
ture of a criminal quality. Prior to 1845, the *capias ad
satisfaciendum* was a possible auxiliary of every civil judg-·
ment. The act of March 27, 1845 (Rev. Stats. 1845,.
p. 574), provided that thereafter no person should " be
arrested, held to bail, or imprisoned, on any mesne pro-
cess or execution founded upon any contract or debt what-
soever." The statute of March 20, 1835, which provided
that " for want of sufficient goods, chattels, and real es-
tate, * * * the body of the defendant be taken in exe-·
cution," was thus left in full operation as to all actions
founded upon *torts.* Afterwards, the enactment of 1855
was adopted (being literally the section 4041 of our pres-·
ent revision), manifestly for the purpose of putting the·
remedy in actions *ex delicto* upon a like footing with that in·
actions upon contract. The whole array of adjudications·
since 1855, wherein our Supreme Court has recognized the·
validity of municipal ordinances which annexed bodily im-·
prisonment to a default in the payment of a fine or penalty
recovered by action of debt, is conclusive that this section
was never supposed to apply to such recoveries.

In *City of St. Louis* v. *Sternberg*, 69 Mo. 290, that·
part of the city ordinance which denounced imprisonment·

of the offender, for failure to pay the fine recovered against him for practising law without a license, was specially considered by the court, and held to be valid. That ordinance derived its authority from the present City Charter, and, in all its elements of intrinsic force, was identical with the one under which this prisoner is now detained. We have long had a number of general statutes in force, which provide for the recovery of penalties by civil action, and for imprisonment of defendants who fail to pay such penalties. Wag. Stats. 158, sect. 52; *Id.* 1318, sect. 16. There are other provisions of similar character, which need not be cited. It was never before suggested, so far as we are aware, that such regulations were in conflict with that of section 4041, which the prisoner here invokes. Civil actions, so called, for the recovery of fines and penalties, have always been considered as so far *quasi* criminal in their nature, as to be excluded from the statutory provision against imprisonment in purely civil proceedings. A different interpretation would render penal ordinances absolutely powerless against the irresponsible offenders who should be most surely reached by them.

Counsel for the prisoner says that the city of St. Louis had no authority to establish the First District Police Court, or to provide for the appointment of a clerk thereof. The authority to do both is directly traceable, through ordinance and charter, to the State Constitution. The respondent introduces in evidence City Ordinance number 10339, approved July 31, 1877. This, in plain terms, establishes the court and the clerk. Power to pass the ordinance is given in the Charter, Article IV., sections 25–28. The Charter authority derives sanction from Article VI., section 1, of the Constitution. We fail to appreciate the argument which finds in the use of the name " First District Police Court," a departure from the constitutional authority, for the establishment of municipal courts. The

Constitution treats of things, and not mere names. The Police Court is undoubtedly a municipal court. If it were essential to follow the constitutional nomenclature, every such court should be called "municipal court," however numerous they might be, without any addition of "first," "second," or other expression whereby they might be distinguished, one from another. The power to provide for a clerk is, if deemed expedient by the legislative agency, necessarily incidental to the power to establish the court. So, also, as to the defining of his powers and duties, within proper limits. The issuing of executions upon the judgments of his court is within those limits. The execution here complained of runs in the name of the State of Missouri, and is open to no objection under the Revised Statutes, section 4038.

It is too late, at the present day, to contend for the right of trial by jury in cases of petty offences cognizable by local courts, in the exercise of police jurisdiction. The subject has, long since, been judicially exhausted. No authority recognizes the claim, as here presented.

The objection that the ordinance against selling lottery tickets is not properly enforceable, because of the existence of a State law against the same offence, has no weight. It is completely disposed of in *The State* v. *Gordon*, 60 Mo. 383.

We find that the prisoner is detained in custody by virtue of a lawful execution issued upon the final judment of a court of competent jurisdiction; and therefore remand him to the same custody.

Judge THOMPSON concurs; Judge BAKEWELL is absent.