## EX PARTE A. C. BOWLER.

### June 10, 1884.

HABEAS CORPUS — ORDINANCES — PRACTICE. — Under an application for the discharge of a prisoner, under a writ of *habeas corpus*, on the sole ground of the unconstitutionality of the ordinance for a violation of which he is held for trial, an appellate court will not pass upon the validity of the ordinance, but will remand the prisoner.

APPLICATION for a writ of *habeas corpus*.
*Prisoner remanded.*
TAYLOR & POLLARD, for the petitioner.

BAKEWELL, J., delivered the opinion of the court.
The petition alleges that Bowler is unlawfully restrained of his liberty by the chief of police of the city of St. Louis,

at the St. Louis jail, and that the illegality of the restraint consists in the fact that this is being done by virtue of city ordinance 12,473, the only accusation against the petitioner being, that on June 3, 1883, he engaged in the business of a solicitor or canvasser of sewing machines in said city without a license, in violation of the fifteenth sub-division of section —— of said ordinance, which requires every such solicitor to pay a city license of $25.00. The petitioner alleges that said subdivision conflicts, for reasons stated in the petition, with various provisions of the constitution of the United States and of the constitution of the state of Missouri, which are referred to in the petition.

The return of the chief of police sets forth that by the provisions of the city ordinance, copies of which are filed and made part of the return, no one is permitted to carry on the business of a sewing machine agent in the city of St. Louis without a license from the city collector; that, under the instructions of the police commissioners and of respondent, to take into custody all persons violating this ordinance, the petitioner was, at the date named in his petition, arrested by a member of the police force of the city of St. Louis, for carrying on in said city the business of a sewing machine agent without a license. The return further sets out the ordinance 11,668, chapter 30, establishing the police courts of the city of St. Louis, which is made part of the return, and which establishes police courts in St. Louis, giving them original jurisdiction for the recovery of fines, forfeitures, or penalties imposed for violation of any city ordinance, and provides that where any one is arrested by the police for violation of city ordinance, no warrant shall be necessary, but he shall be tried on the written report of the chief of police, stating the offence committed. The return further shows that petitioner is held upon the written report of the chief of police to the first district police court of the city of St. Louis, dated June 4, 1884, which is made part of the return, and which, in the

usual form, charges petitioner with violation of city ordinances, as set out in the petition and return, in this, that he did, in the city of St. Louis, on June 3, 1884, carry on the business of a sewing machine agent without having first obtained a license from the city collector, etc.

The petitioner moves to quash this return; and in support of his motion, he urges various reasons why the ordinance whose provisions he is charged with violating ought to be held invalid, as violating provisions both of the state constitution and of the constitution of the United States.

The statute provides (Rev. Stats., sect. 2650) that: "If it appear that the prisoner is in custody by virtue of process from any court legally constituted, or issued by any officer in the service of judicial proceedings before him, such prisoner can only be discharged," in one of the six cases enumerated in the section. The supreme court held *In re Harris* (47 Mo. 164), that this provision precludes any examination, in a *habeas corpus* proceeding, into the constitutionality of the law for the violation of which the prisoner is held, under legal process, by a court having jurisdiction of the person and the offence, and in custody of the proper officer.

It appears from the ordinance creating the police courts of St. Louis (Rev. Ord. 1881, sect. 19), various provisions of which have been frequently considered by this court on application for the discharge of prisoners (*Ex parte Kiburg*, 10 Mo. App. 442; *Ex parte Washington, Ibid.* 495, 592), that no summons or warrant need be issued against any person lawfully arrested by any officer of the city police, but a trial shall be had upon the written report of the chief of police, and the person so arrested may require a written statement of the nature of the offence with which he is charged, and the ordinance under which the charge is brought. A police officer may lawfully arrest for a misdemeanor committed in his presence. *Taaffe* v. *Slevin*, 11 Mo. App. 507. It will not be presumed by us that the

arrest of the prisoner by a police officer was illegal. In the absence of anything to the contrary, the presumption is that the original arrest was made under circumstances which warranted the officer in making an arrest for a misdemeanor.

As the arrest, therefore, appears, from the face of the return, to be *prima facie* a legal arrest, the motion to quash ought to be overruled, unless we are to go into the question which the petitioner seeks by this proceeding to raise, as to the validity of the ordinance that he is charged with violating.

If the prisoner were in custody by virtue of process from a court, or issued by an officer in the service of judicial proceedings before him, the case would be precisely that presented by *Ex parte Harris* (*supra*), and there could be no question that we ought not, in this proceeding, to examine into the validity of the law constituting the offence for which the prisoner was arrested. But though the prisoner was arrested by an officer having power to arrest for a misdemeanor, and though on such an arrest he might lawfully be held for trial, he is not in custody by virtue of " process from any court, or issued by an officer in the service of judicial proceedings before him." The case does not, therefore, come within the precise language of the *habeas corpus* act. We think, however, that it comes within the equity of the statutory provision; and it is clearly within the reasoning of the supreme court in *Ex parte Harris*. The prisoner, in this case, as in that, " is in custody of the proper officer, and by virtue of a provision of the law." The prisoner, in this case, as in that, " can have his trial, and if he is dissatisfied with the judgment, and desires to test the validity of the law, the courts are open to him, as they are to all other persons charged with the violation of the laws of the land." " Admit this proceeding," says Judge Wagner, in the case just cited, " and every person charged with committing an offence of every kind and

description whatsoever, instead of standing his trial, and litigating the matter as the law directs, can come here and ask our advice as to the validity of the law under which he is arraigned. Such a precedent can not be established, and the legislature clearly saw the impolicy of the proceeding when it placed a prohibition upon it." This language clearly indicates the view of the supreme court that *habeas corpus* is not the proceeding in which the constitutionality of penal enactments can be litigated by those charged with their violation. The fact that the prisoner in one case was charged with violating a general law of the state, and in the other with the violation of a municipal ordinance, furnishes no ground for distinction in favor of the prisoner. On the contrary, the hardship of a refusal to examine into the validity of the law on an application by *habeas corpus* for a discharge of the prisoner, seems to be less where the penalty is a fine than where the punishment is more severe.

The presumption is in favor of the power of the legislative body to pass the law which it has enacted. The courts will not declare the law void on a mere doubt, nor without the most careful consideration. The refusal by the supreme court to entertain the question of the constitutionality of a law for the violation of which the prisoner was held, on an application where the petitioner was imprisoned under an arrest by the sheriff on an information for violating a penal statute, ought to have very great weight with us, even if the case is not of controlling authority; for the reason that in the case of the supreme court, if it should examine into the validity of the violated law before a trial of the prisoner, it speaks as the court of last resort, which must finally determine the question, but, whilst our judgment against the law would discharge the prisoner without appeal, it is not to this court that it belongs, under the organic law of the state, finally to settle the question as to the validity of the law. If we should declare void the ordinance which we are now asked to consider, in every

case of arrest for its violation, application to this court, or to any tribunal within the jurisdiction of this court, for a writ to discharge the prisoner before trial, would result in his discharge, and the ordinance would be nullified without any opportunity on the part of the city to test its validity by an appeal to the supreme court.

We are referred by counsel for the prisoner to *Ex parte Slater* (72 Mo. 102). That case is not in point. The prisoner was held under an indictment for felony, found in a country other than that in which the offense was committed, under a statute authorizing this to be done, and which the supreme court, on an application by *habeas corpus* for the discharge of the prisoner, found to be unconstitutional and void. The jurisdiction of the court had been exceeded as to place, which is one of the six cases expressly enumerated in the *habeas corpus* act (Rev. Stats., sect. 2650), in which the prisoner is to be discharged though " in custody in virtue of process by a court or issued by an officer in the service of judicial proceedings before him." The court was bound to decide the question of jurisdiction, and, in doing so, must necessarily pass upon the validity of the law under which the jurisdiction to issue the process was claimed. There was no question whatever of examining, at the instance of the prisoner, under the *habeas corpus* act, into the validity of the penal statute with a violation of which the prisoner was charged. We are also referred to *Ex parte Bethurum* (66 Mo. 545). That was a case of excessive sentence, in which the trial court had exceeded its jurisdiction as to matter, which is also a case expressly enumerated in the above cited section of the *habeas corpus* act, as one in which the prisoner is to be discharged by the writ. The supreme court necessarily examined into the validity of the law which professed to give it authority to correct on *habeas corpus* an erroneous sentence; and it held the law valid, corrected the sentence, and remanded the prisoner, without in any way impairing the authority of *Ex parte*

*Harris,* or impeaching the reasoning in that case, or anything said in that opinion.

The question that we have to consider is, not whether the court, on *habeas corpus,* should look into the validity of the law conferring power upon the court that issues the writ, or on the officer that executes the process under which the prisoner is held, but whether on *habeas corpus* the court should examine the question of the constitutionality of the law which the prisoner is arrested for disobeying.

We know that questions involving the constitutionality of acts of the legislature and of acts of congress which the prisoner is charged with violating, as well as questions involving the jurisdiction of the highest courts, state and federal, and of the validity of their process, have been decided by courts of inferior jurisdiction and by individual judges of these courts, on application under this writ for a discharge of the prisoner. We are aware that it has been held in some of the states that it is the duty of any judge, on a hearing on *habeas corpus,* to decide such questions. In some of the states provision is made for an appeal from the order remanding the prisoner. Where this is so, it may sometimes be well that questions of this sort, requiring the most serious consideration by the ablest and most authoritative expounders of the law, should be passed upon by the lower courts and by their individual judges sitting apart. In Missouri a judge of a county court has as ample power to grant the writ and order a discharge under it, as has the supreme court of the state; and from the decision of the county judge there is no appeal. This court has no more power in the matter than has any judge of a county court, though such judges need not be lawyers and may be quite ignorant of law. No appeal lies from our decision, and no appeal would lie from the decision of the lay judge, whether remanding or discharging the prisoner; and, for the reasons stated, we are of the opinion that it was not the intention of the legislature that the writ should be used for the pur-

pose of enabling a person accused of crime or of violating any penal enactment, to obtain the opinion of the judges of the appellate court, in advance of a trial, as to the validity of the law which he is accused of violating. If the prisoner has chosen to determine for himself that the enactment is, for any reason, void and, on the chance of this, has ventured to violate it, there is surely no hardship in saying to him that he shall take the consequences and shall stand his trial in the usual way. Such a course is conducive to good order and to a proper respect for law.

We are referred to *Ex parte Siebold* (100 U. S. 371). The case is not of binding authority upon us. Nor do we think it in point. The court, there, in a case where it would have had no power to review the judgment by which the prisoner was convicted, had the act been constitutional under which the conviction was had, exercised by the writ of *habeas corpus*, its appellate jurisdiction in the interest of personal liberty. *Ex parte Watkins*, 32 U. S. 568; *Ex parte Kaine*, 55 U. S. 117; *Ex parte Wells*, 59 U. S. 307. But it will not, we suppose, be contended that we exercise appellate jurisdiction by this writ. We exercise our original jurisdiction in entertaining an application of this nature.

If the constitutionality of the law which a prisoner is charged with violating is thus to be examined in advance of a trial, and by a judge of an intermediate appellate court sitting apart, as must frequently be the case if the precedent is now set of granting the writ for such a purpose, there will be danger, owing to the exigencies of the writ, of such important questions being decided without being regularly discussed or maturely considered. "Such a decision of matters in advance would become a new, and perhaps a prolific source of embarrassment, from the difficulty of getting rid of immature conclusions, or the sanction of them with the view of maintaining consistency," to use the language of an eminent judge in adverting to a similar danger.

And, as I have referred to *Ex parte Wells* (*supra*), I can not better close than by adopting the language of Judge Curtis in his dissenting opinion in that case: "This great remedial writ of *habeas corpus*, so efficacious and prompt in its action, and so justly valued in our country, ought not to be made an instrument to unsettle the lines of jurisdiction and to produce conflict and disorder. If the true sphere of its action is suffered to become confused and indistinct, serious consequences, affecting the administration of the criminal laws, may follow. For these reasons, though sensible of the bias which I suppose every one has for this process, I have felt constrained to examine with care" the question of our right to determine, on such an application, before trial, the validity of the law for the alleged violation of which the prisoner is held.

The motion to quash the return will be overruled. As counsel for prisoner stated on the hearing that the motion to quash raised every question going to the merits of the application, and that he did not desire to plead over, in case it was overruled, it follows that the prisoner should be now remanded. It is so ordered. All the judges concur.