## BRADDY *vs.* THE CITY OF MILLEDGEVILLE.

1. On the trial of a case arising under a municipal ordinance, that "all women of disreputable character, commonly known as 'street walkers,' who may be found standing or loitering about the streets or stores of this city at night, and who cannot prove that they are on unavoidable business, shall be arrested," etc., evidence of the general character of the woman so arrested was admissible.

(*a.*) The evidence was sufficient to warrant the conviction, and the judge did not abuse his discretion in refusing to interfere therewith.

2 Where a person, charged with violating a municipal ordinance, was first tried before the mayor, and from his decision an appeal was taken to the council, at which trial he did not preside, the fact that he aided in the prosecution by bringing forward evidence and examining witnesses, was not improper conduct on his part, and furnished no ground for *certiorari* from the decision of the council.

3. A municipal ordinance prohibiting disreputable women from standing or loitering about the streets or stores at night, unless on unavoidable business, is not class legislation within the prohibition of the constitution, but is a police regulation within the power of the municipal authorities to make.

4. There is nothing in the other exceptions taken, and they are not in such shape as to enable this court to pass upon them.

March 17, 1835.

Criminal Law. Evidence. Municipal Corporations. Lewdness. Night-walking. Before Judge LAWSON. Baldwin County. At Chambers. December 29, 1884.

To the report contained in the decision, it is only necessary to add that the grounds of error alleged in the *certiorari* were as follows:

(1), (2.) Because the finding of the council was contrary to law and evidence.

(3.) Because the council permitted the mayor, who had tried and convicted the petitioner on a former trial upon the same affidavit and warrant, to remain in the court during the trial and to act as prosecutor and examine the witnesses for the city, thereby influencing the court by his acts, words and deeds to sustain and affirm the judgment and sentence which he had previously rendered. [The petitioner was first tried before the mayor and convicted; she then appealed to the council. On the appeal trial, the mayor did not preside or take part as such, but put questions to the witnesses in aid of the prosecution.]

(4.) Because the ordinance under which the petitioner was tried, convicted and sentenced is unconstitutional, it being in conflict with those clauses of the fundamental law of the land which prohibit class legislation.

(5.) Because the court permitted the mayor to put in issue, by all the witnesses for the state, the character of the petitioner, over her objection and solemn protest.

(6.) Because when the petitioner was convicted by the mayor, she was forced to pay the officers of the city their costs before her appeal to a higher judicial tribunal would be received or entered, which is contrary to the constitution of the state.

(7.) Because the petitioner was arrested, imprisoned and deprived of her liberty without cause and without due process of law, as the evidence shows, and for no other purpose than to increase the exchequers of a few city officers.

The judge of the superior court refused the *certiorari*, and defendant excepted.

· D. B. Sanford; M. Grieve, for plaintiff in error.

Robt. Whitfield, solicitor general, by J. H. Lumpkin, for the state.

Hall, Justice.

The defendant, who appears from the evidence to have been one of the most shameless of the class of depraved women to which it was shown she belonged, was found guilty by the municipal authorities of Milledgeville, and lightly punished for violating the ordinance of that city, that

"All women of disreputable character, commonly known as 'street walkers,' who may be found standing or loitering about the streets or stores of this city at night, and who cannot prove that they are on unavoidable business, shall be arrested, . . . and on conviction shall be punished by fine or imprisonment," etc.

She applied for a *certiorari*, which the judge refused to sanction, and to this refusal she excepted and brought the case here by writ of error for review.

1. We think that evidence of the general character of this woman was admissible, her character being the main question in issue (Code, §3757; 57 *Ga.*, 390), but besides this evidence, there was direct and positive testimony of her open lewdness and unchaste conduct. She was found loitering about the streets and stores of the city after dark, and utterly failed to show that she was there upon any necessary occasion, although she had ample opportunity to do so, if such had been the fact. There was sufficient evidence to warrant her conviction, and the judge did not abuse his discretion in refusing to interfere with it.

2. She was first tried before the mayor, and from his decision appealed to the council. On her trial before that body, the mayor did not preside, but he aided in the pros-

ecution by bringing forward the evidence, examining witnesses, etc ; to this exception is taken. He is the chief executive officer of the municipality, and is under obligation to see to the enforcement of its ordinances. There is no impropriely in his acting in the manner complained of. It is not only his right, but his duty, to see that the laws of the city are enforced against violators of the same.

3. We do not appreciate the force of the objection that this ordinance is violative of those clauses of the constitution which it is alleged inhibit " class legislation." No such provisions have been pointed out, and we are unable to find them. It is the right, as well as the duty, of these municipal corporations to make and enforce regulations for the observance of public decency, as well as for the preservation of the good order, peace and health of the community. Such powers are necessarily incident to the object of their being; they are involved in the very idea of police regulations. Dill. Mun. Corp., 393. Could this constitutional objection be entertained, it would sweep from our statute book all the laws against bawdy houses, gaming, thefts, lewdness, tippling, and almost every other species of offense that can be imagined. It is true we have no statute against " night walking," but such practices were inhibited by the common law (Wharton Crim. L., 441), and tend strongly to vagrancy, lewdness and other offenses of that character which are inhibited by our Code. If such a provision was found on our statute book, this municipality could not exercise it. Its absence from the penal Code justifies its exercise by the city authorities. 69 *Ga.*, 503.

4. There is nothing in the other exceptions requiring notice. They are not in such a shape as enables the court to pass upon them. Independent of the objection that the *certiorari* was not presented for the sanction of the judge within the time prescribed by law, upon which we express no opinion, we find nothing in the case calling

upon us to reverse this decision. The proceedings of the council of Milledgeville are fully vindicated by the facts disclosed by this record.

Judgment affirmed.