No. 9960.

THE STATE OF LOUISIANA VS. L. G. LABATUT.

A particular is not repealed by a general law, unless they are so repugnant that they can not stand together under any circumstances.

State vs. Labatut.

A grant of power conferred by the Legislature in the charter of a municipal corporation to pass and enforce ordinances to suppress and punish the sale of adulterated drinks, is not recalled by a subsequent general statute providing for the prosecution of the same offense throughout the State. Hence, an ordinance of the city of New Orleans, adopted under a power to punish the sale of adulterated drinks, and which punishes the adulteration of milk for sale, is not abrogated by Act No. 82 of 1882, which defines and punishes the adulteration of drugs, food and drinks.

APPEAL from the Second Recorder's Court of New Orleans. *Burthe*, J.

*M. J. Cunningham*, Attorney General, and *F. C. Zacharie*, for the State, Appellee.

*M. Voorhies*, for Defendant, Appellant.

The opinion of the Court was delivered by

POCHÉ, J. Defendant appeals from the sentence of the Recorder's Court of the Second District of the city of New Orleans, condemning him to a fine of $25 or, in default of payment, to imprisonment of thirty days, for the violation of a city ordinance against the selling of adulterated milk.

His ground of resistance is the alleged illegallity and unconstitutionality of the ordinance, and it presents the point that the same offense is made a misdemeanor under a State law, namely, Act No. 82 of the Legislature of 1882, and that the effect of the statute and of the ordinance co-existing is violative of that provision of Article 5 of the State Constitution, which forbids that any person be twice put in jeopardy of life or liberty for the same offense.

As stated, this prosecution is exclusively for the violation of the city ordinance. It was adopted on the 24th of June, 1879, under the charter of the city of New Orleans of 1870, which contained ample delegation of power to make and enforce all regulations on the subject matter, and at a time when there was no statute of the State either defining or punishing the same offense.

It follows, therefore, that up to the passage of Act No. 82 of 1882, no possible doubt could have been entertained as to either the legality or constitutionality of the ordinance, which contained the only existing provision on the subject, in full accord with ample legislative authority in the premises.

Now, in the new charter of the city of New Orleans, which is Act No. 20 of 1882, approved on the 23d of June of that year, the previous grant of legislative authority to the municipal council to make definite regulations on this subject was not only confirmed, but it was

extended and more specially emphasized. Under that charter, the Council is vested with full power, and charged with " the duty to pass such ordinances and to see to their faithful execution, as may be necessary and proper, * * * to prevent the sale of adulterated or decayed food, and punish the same; to punish the sale of adulterated drinks." * * *

It is clear, therefore, that instead of being in the least impaired by the effect of the charter of 1882, the ordinance under discussion received additional force and vitality therefrom.

Now, it is true, that the same offense is provided for in act No. 82, approved on the 5th of July, 1882, which is entitled an act " to define. and punish adulteration of drugs, food and drink," * * * and which proposes to punish all offenders by a fine of fifty dollars for the first offense, and of one hundred dollars for each subsequent. offense.

The question presented by the case is, therefore, to consider the effect of Act 82, on the powers delegated to the city under Act No. 20 of 1882, and incidentally on the city ordinances of June 24, 1879.

It must be noted, in the first place, that Act 82 of 1882, contains no repealing clause; in the second place, that it is a general statute; and in the third place, that Act No. 20 of 1882, known as the charter of. the city of New Orleans is a particular or special law. Under the jurisprudence firmly established in this State, a general law thus characterized does not repeal a particular law unless they be so repugnant that they cannot stand together under any circumstances. DeArmas' case 10 M. 172; State vs. Kitty, 12 Ann. 805; Bendonn vs. Barbin, 13 Ann. 458; St. Martin vs. New Orleans, 14 Ann. 113; State vs. Natal, et. al., 39 Ann., not yet reported.

The legislative intent as gathered from the general tenor, the subject matter, and the mischief to be remedied by the two enactments respectively, is the safest test of the effect of the new, upon the old, law.

The leading object of the statute is to protect and promote public health throughout the State, and the manifest purpose of delegation of power in the charter of 1882, is to reach the same object in the city of New Orleans through the direct action of the Council.

It will be conceded without the necessity of an argument to support the proposition, that the sale of milk generally, in a large city is by far in excess than in any other locality of the State, and that, therefore, the probabilities of adulterating milk are proportionally greater there than in any other locality in the State; from which it follows that precautions against the evil must be more guarded and more closely exercised in a large city than in any other community.

These considerations were, beyond a doubt, the motives which prompted the Legislature to confer to the City Council the ample powers which are contained and detailed in section 7 of Act 20 of 1882, on the subject of adulterated food and drinks, and which so completely sanction and so absolutely legalize the provisions of the ordinance of June 24, 1879.

Having thus and so clearly and so wisely delegated to the municipal authorities of the city of New Orleans the express power to legislate upon a subject so peculiarly within the province of a municipal government, the law makers of Louisiana are surely not amenable to the violent presumption that, at the same session of the Legislature, nay one week later, they would deliberately destroy their labors in that direction by an enactment which recalls the recently delegated authority. We feel confident that they had no such intention, and hence we hold that the legal existence and the binding force of the ordinance of June 24, 1879, which was clearly authorized by the charter of 1870, under which it was adopted, and legally reinforced under the charter of 1882, has not been recalled, annulled, or in the least impaired by the passage of Act 82 of 1882, and that therefore the recorder's court is vested with power to enforce the same by fine or imprisonment. Under these views we are not called to further define the effect of the statute of 1882; or to decide whether it applies to the city of New Orleans. That question can properly come up only in a prosecution under that act.

That consideration is also an answer to defendant's argument that the co-existence of a statute of the State and of a city ordinance both defining and punishing the same offense exposes offenders to be twice put in jeopardy for the same offense.

Thus far he has been prosecuted but once, and solely for the violation of the city ordinance. If he should hereafter be prosecuted in the State court for violation of the statute, his plea of *autrefois convict*, coupled with the allegation of the illegality of the statute as applied within the limits of the city of New Orleans, will properly present the question which will then be decided.

His right to relief at our hands in the instant case turned upon the alleged nullity of the city ordinance, and our conclusion that the ordinance is yet in full force, is a complete disposition of the controversy as presented to us in its present shape.

The judgment appealed from is therefore affirmed with costs.