HOOD *et al. v.* VON GLAHN.

1. In 1857, although there was a general penal statute operative throughout the State making it a misdemeanor to keep open a tippling-house on the Sabbath day, there was nothing to inhibit the General Assembly from passing a local statute for the city of Augusta empowering the city council "to pass all ordinances in relation to keeping open tippling-houses on the Sabbath day in said city."

2. The language of the third section of the act of December 22d, 1857, being that, "The City Council of Augusta are hereby further empowered to pass all ordinances in relation to keeping open tippling-houses on the Sabbath day in said city," etc., the authority was delegated to the city council to enact an ordinance in these terms: "No retailer shall sell or furnish to any person, or persons, spirituous, vinous or fermented liquors on Sundays, . . nor shall they, when thus not permitted to sell, open, have or keep open the doors or windows of their retail shops; and this provision applies to any bar-room, tippling-house, shop, store or confectionery in which liquors are sold or furnished."

3. The recorder's court has jurisdiction to try violations of the aforesaid ordinance, committed by keeping open a bar on Sunday, and a person convicted in that court has no right to be discharged on *habeas corpus*, based on the alleged want of such jurisdiction by reason of the criminal act being a violation of the general law of the State as well as of the city ordinance.

January 11, 1892

Municipal corporations. Statutes. Tippling-houses. Jurisdiction. *Habeas corpus.* Before Judge EVE. City court of Richmond county. August 17, 1891.

Von Glahn, the keeper of a bar-room and a retail liquor dealer, who had been regularly summoned according to the practice of the recorder's court of Augusta, was tried before that court on the charge "of keeping open his bar on Sunday, July 19, 1891," under this ordinance of the City Council of Augusta: "No retailer shall sell or furnish to any person, or persons, spirituous, vinous or fermented liquors on Sundays, or between the hours of twelve o'clock at night and one hour before sunrise, or after a quarter to twelve o'clock P. M. on

Saturdays. Nor shall they, when thus not permitted to sell, open, have or keep open the doors or windows of their retail shops; and this provision applies to any bar-room, tippling-house, shop, store or confectionery in which liquors are sold or furnished." He pleaded to the jurisdiction of the court, on the ground that the offence charged was a State offence, and the court, therefore, had no jurisdiction to try him, and also entered a plea of not guilty. His plea to the jurisdiction was overruled, and, after evidence heard, he was found guilty and sentenced to pay a fine of $100 or to work ninety days on the public works. He declined to pay, whereupon he was taken charge of by the chief of police, Hood. He thereupon sued out a writ of *habeas corpus*, alleging his trial, conviction and sentence, and further alleging that he declined to pay the fine because the recorder's court had no jurisdiction to try the case, for the reason that the same had been provided for by a legislative enactment; and that his restraint by reason of the judgment was illegal and in violation of his rights. The *habeas corpus* writ was granted, and in answer Hood returned that he held Von Glahn by virtue of the sentence mentioned above, and that his detention was legal and the recorder's court had jurisdiction to try the offence; and that petitioner's remedy, if he had any, was by *certiorari* and not by *habeas corpus*. The judge declined to dismiss the petition on the ground that the remedy was by *certiorari* and not by *habeas corpus*, and held that the recorder's court had no jurisdiction to try defendant, as the offence of which he was convicted was provided for by State law, that he could only be tried in the State courts, and that his conviction was therefore illegal and his restraint without authority of law; and ordered his discharge from further custody. To this decision Hood excepted.

JOHN S. DAVIDSON, WM. T. DAVIDSON, and brief of SAMUEL B. ADAMS, for plaintiff in error.

Brief of F. G. DUBIGNON, *contra*.

SIMMONS, Justice.

In 1857 the legislature passed an act which provided as follows: "Said City Council of Augusta are hereby further empowered to pass all ordinances in relation to keeping open tippling-houses on the Sabbath day in said city, and in relation to lewd-houses, or houses of ill fame, for the purpose of suppressing them in said city," etc. Acts 1857, p. 166. At that time there was in existence a general penal statute operative throughout the State, making it a misdemeanor to keep open a tippling-house on the Sabbath day. Cobb's Dig. 815, §221; Code, §4535. Under an ordinance of the city of Augusta, which is set out in the reporter's statement, the defendant in error was tried and found guilty by the recorder's court upon the charge of "keeping open his bar on Sunday, July 19, 1891." The judgment discharging the defendant on *habeas corpus* involves the validity of the ordinance and the local statute above referred to. The question to be determined is, whether the legislature had power to authorize the ordinance. Could the legislature authorize a municipal corporation to punish, as an offence against the municipality, an act punishable under a general law as an offence against the State? There is no decision of this court in which the question has been directly adjudicated. Elsewhere it has frequently arisen, and has almost as frequently been decided in the affirmative. The following are cases in which the power is recognized or upheld:

Mayor *v.* Rouse, 8 Ala. 515; Mayor *v.* Allaire, 14 Ala. 400; Town of VanBuren *v.* Wells, 53 Ark. 368; Hughes *v.* People, 8 Col. 536; Wragg *v.* Penn Township, 94 Ill. 11; Robbins *v.* People, 95 Ill. 175; Haw-

kins v. People, 106 Ill. 629, 637; Levy v. State, 6 Ind. 281; Ambrose v. State, Id. 351; Williams v. Warsaw, 60 Ind. 457; Town of Bloomfield v. Trimble, 54 Iowa, 399; Rice v. State, 3 Kan. 135; March v. Commonwealth, 12 B. Mon. 25; Kemper v. Commonwealth, 85 Ky. 219; Shafer v. Mumma, 17 Md. 331; People v. Hanrahan, 75 Mich. 611; People v. Detroit, etc. Works, 82 Mich. 471; State v. Ludwig, 21 Minn. 202; State v. Lee, 29 Minn. 445; St. Louis v. Bentz, 11 Mo. 61; City of St Louis v. Cafferata, 24 Mo. 94; State v. Cowan, 29 Mo. 330; State v. Thornton, 37 Mo. 360; Ex parte Kiburg, 10 Mo. App. 442; City of Brownville v. Cook, 4 Neb. 101; Howe v. Treasurer of Plainfield, 37 N. J. Law, 145; Wood v. City, 14 Barb. 428, 429; City of Brooklyn v. Toynbee, 31 Barb. 282; Polinsky v. People, 11 Hun, 390; 73 N. Y. 65; State v. Sly, 4 Oreg. 277; State v. Bergman, 6 Oreg. 341; Wong v. City of Astoria, 13 Oreg. 538; State v. Williams, 11 S. C. 288; Greenwood v. State, 6 Baxt. (Tenn.) 567; State ex rel. Karr v. Taxing Dist., 16 Lea (Tenn.), 240; Hamilton v. State, 3 Tex. App. 643; Ex parte Douglass, 1 Utah, 108.

Except some early cases which have been overruled so far as they involve this question (Slaughter v. People, 2 Doug. (Mich.) 334; City of Madison v. Hatcher, 8 Blackf. (Ind.) 344; Bogart v. Albany, 1 Ind. 38, and Schroeder v. City Council, 3 Brev. (S. C.) 533), we have found but one instance in which the power was denied (In re Sic, 73 Cal. 142), and there no adjudication on this point was necessary. Neither in that case nor in others holding generally that the city could not punish for acts penal under general laws, does it appear that the legislature had attempted any express grant of the power. The question for decision was as to the validity of ordinances which it seems were without express legislative sanction. There is of course a wide distinction between cases where there is a clear and well defined

grant of authority as to a specified subject, and those in which it is sought to infer authority from the "general welfare clause" usual in municipal charters. Of the latter class were Town of Washington v. Hammond, 76 N. C. 33, State v. Langston, 88 N. C. 692, and State v. Keith, 94 N. C. 933. That these cases are not to be construed as denying to the legislature power to authorize such ordinances, see State v. Brittain, 89 N. C. 574, where Merrimon, J., in delivering the opinion of the court, says: "It may be that the legislature has power to authorize a town to make an offence against the State a separate offence against the town; but this could be done only by an express grant of authority." In City of New Orleans v. Miller, 7 La. Ann. 651, which is sometimes cited on this subject, it does not appear that any authority was granted as to the act in question; and in a recent case in the same State (State v. Labatut, 39 La. Ann. 513) the legislative grant was sustained.

The rule laid down in Dillon on Municipal Corporations (vol. 1, §368, 4 ed.) is as follows: "Where the act is, in its nature, one which constitutes two offences, one against the State and one against the municipal government, the latter may be constitutionally authorized to punish it, though it be also an offence under the State law; but the legislative intention that this may be done ought to be manifest and unmistakable, or the power in the corporation should be held not to exist." This we regard as a correct statement of the law. In the Georgia cases cited as opposed to this power, it will be found that the ordinances held invalid were not shown to have been authorized by any express legislative grant. Mayor, etc. of Savannah v. Hussey, 21 Ga. 80; Jenkins v. Mayor, etc. of Thomasville, 35 Ga. 147; Vason v. City of Augusta, 38 Ga. 542; Reich v. State, 53 Ga. 73; Rothschild v. City of Darien, 69 Ga. 503. In the first of these cases (Mayor v. Hussey) it was held by a majority of

the court, BENNING, J., dissenting, that a general power
to pass such ordinances "as shall appear to them requi-
site for the security, welfare and convenience of the
city, and for preserving health, peace and good govern-
ment within the same," did not authorize the municipal
authorities to legislate as to an offence covered by the
State laws.   Not only was there an absence of express
authority from the legislature as to the offence in ques-
tion, but the prohibited act—harboring articled seamen
—was not regarded as in its nature an offence against
the city.   So far from denying the power of the legis-
ture to authorize an additional punishment where the
act is of that nature, LUMPKIN, J., in delivering the
opinion of the court, says : "I might go further and
concede that where the State law defines an offence gen-
erally, and prescribes a punishment, without reference
to the place where it is committed, in town or country,
and the act when committed in the streets· and public
places of the city would be attended with circumstances
of aggravation, such as an affray for instance, the cor-
porate authorities, with a view to suppress this special
mischief might probably provide against it by ordi-
nance ; because that ingredient or concomitant of the
crime might not be supposed to be included in the State
law."   BENNING, J., in the same case, says : "I forbear
to go into the question whether the legislature had not
the *power* to authorize the mayor and aldermen to make
such an ordinance as the one in question, because I do
not know that either of the other members of the court
denies to the legislature the power.   I assume that the
legislature had the power."

In the remaining cases the question of legislative
power is not discussed or passed upon.   They decide
merely as to the power of the city, and of course only
as to its power under the facts in those cases, and are
not to be construed as deciding that in no case can a

city exercise or the legislature vest it with the power in question. In *Jenkins* v. *Mayor, supra,* the holding is, that "city authorities, *under the usual grant of power contained in their charters,* cannot by ordinance declare those acts offences against the city, which by the general law are defined and made punishable as offences against the State." There was no provision in the charter as to the offence in that case,—selling spirituous liquors to free persons of color. In *Vason* v. *City of Augusta, supra,* the only authority claimed for the ordinance was a general welfare clause. In *Reich* v. *State, supra,* it appears that the power to punish for keeping open doors on Sunday was claimed under a grant of authority to punish for selling without license. In *Rothschild* v. *City of Darien, supra,* no express authority was shown.

The arguments which oppose this power are grounded mainly upon the constitutional inhibition against a second punishment for the same offence. It is contended that both State and city cannot punish for the same act; and that if this be conceded, but it should nevertheless be held that either may punish if the other has not already done so, the result would be a conflict of special with general laws ; for in all cases where the city had enforced the punishment, the general law would in effect be repealed by the by-law. The reply is, that punishment for the same *act* is not necessarily punishment for the same *offence;* but that when committed in a city, and when of that class of acts which tend to disturb the local health, peace and good order, and which therefore fall properly within the scope of municipal jurisdiction, an act punishable by the general law may, because of its more serious consequences in a city than elsewhere, constitute an additional offence punishable by a municipal by-law and as an offence against the city. In such cases the violation of the ordinance neither includes nor is included in the offence against the State.

This distinction seems to us altogether just and reasonable. The foundation of all municipal power is the special needs of populous and compact communities—the need of distinct governmental and police regulations, and of powers for the enforcement of public order in addition to those exercised by the State; and just as those special needs may authorize the punishment of acts which may be harmless elsewhere in the State, and which are not visited with punishment by the State, so also an act already punishable by the general law may, by reason of its greater harm in the city and the consequent need of more summary and rigorous measures of repression there than elsewhere, warrant a punishment by the city authorities in addition to that imposed by the general law. The State law is framed to meet general conditions, the municipal ordinance to meet special conditions existing in the particular community. In the enactment of penal legislation, the act is considered in connection with its effects, and to these the punishment is adapted. The difference between the effects usual in a city and those usual generally throughout the field of operation of the statute, is deemed a sufficient basis for further legislation, and the imposition of a further penalty, adapted to those effects in the particular locality. It has been well said: " The act is single, its effect double; and for each effect there may properly, and without working injustice to the rights of the offender, be a separate remedy or penalty. The offence is *per se* contrary to the good order of the State, and therefore a certain punishment is prescribed for it wherever committed; but the offence, if committed within the limits of a populous town or city, may work much greater injury to the local peace and good order, and it is proper that the town or city should have its remedy and a separate right to punish for the special and additional wrong done to it. . . In this sense then it may be truly said that the same act may be a wrong to the public at large and an additional

wrong to the community where committed. It would be an offence against the dignity of the State and also an offence against the good order of the municipality." Horr and Bemis on Municipal Police Ordinances, §89.

Whether these features of aggravation exist to an extent which would authorize the grant of power to impose an additional punishment, is for the legislature to determine. That the city cannot assume the power this court, as we have seen, has repeatedly decided. When the legislature by a general law has provided a penalty for the act, it is to be supposed, in the absence of any expression to the contrary, that this penalty is meant to cover all features of aggravation which may attend the act, and is adequate for its purpose, in cities as well as elsewhere; and it would be unreasonable to hold that every incorporated town could assume the need within its limits of an additional punishment, and at its own discretion make provision therefor. Corporate powers are to be construed strictly, and unless plainly conferred should be held not to exist. On the other hand, legislative acts, unless clearly repugnant to the constitution, are to be upheld; and where, as in this case, it is manifestly the purpose of the legislature to give the city power, not over the State offence, but merely over "that ingredient or concomitant," to use the language of LUMPKIN, J., in Mayor v. Hussey, supra, which "might not be supposed to be included in the State law," there is no conclusive reason for holding that there is a violation of either the letter or the spirit of the constitution. See also, on this subject, Cooley on Constitutional Limitations, p. *199, 6 ed. p. 239, where it is said: "The same act may constitute an offence both against the State and the municipal corporation, and both may punish it without violation of any constitutional principle." See also Bishop, Stat. Crim. §24; Wharton, Crim. Pl. & Pr. §440.

What has been said on this topic will apply also to

another objection, viz. that the power of summary punishment by the corporation in such cases is in conflict with the constitutional requirement as to trial by jury in criminal cases. If, as we have shown, the breach of the municipal by-law is not an offence against the criminal law of the State, and neither includes nor is included in the latter, this provision of the constitution has no application to the case. In *Hill* v. *Mayor, etc. of Dalton,* 72 *Ga.* 319, it is said by JACKSON, C. J., that "such or equivalent provisions in the constitution of the United States and all the constitutions of this State, have never been held to apply to police of cities and towns and arrests and trial, with fine and imprisonment therein, under ordinances thereof." See *Williams* v. *City of Augusta,* 4 *Ga.* 509; *Floyd* v. *Eatonton,* 14 *Ga.* 354; *Perdue* v. *Ellis,* 18 *Ga.* 586.

In the present case it cannot be doubted that the act in question—the keeping open of a tippling-house on Sunday—is in its nature an offence against the city as well as against the State, and is calculated to work far greater harm in a city than in less populous localities. There is perhaps no act which more clearly warrants the grant of those additional and summary powers of punishment which are deemed appropriate to the police jurisdiction of municipal corporations. We hold, therefore, that notwithstanding the existence of the general penal statute by which the act in question was made a misdemeanor against the State, there was nothing in any of the constitutional provisions referred to which would *inhibit* the General Assembly from passing this local statute as to the city of Augusta. The grant of power being valid, the ordinance, which is in pursuance thereof, is also valid, and the recorder's court had jurisdiction of this case. The defendant in error, therefore, had no right to be discharged on *habeas corpus* based on the alleged want of such jurisdiction.

*Judgment reversed.*