1335.  CALLAWAY *v.* MIMS.

1358.  BASHINSKI *v.* MAYOR AND COUNCIL OF MACON.

1362.  CALLAWAY *v.* LESTER.

1376.  SCHROEDER *v.* MAYOR AND ALDERMEN OF SAVANNAH.

1404, 1405.  CALLAWAY *v.* SCARBORO.

1. Whenever the General Assembly has, by direct enactment or by its settled public policy derivable from the various statutes passed from time to time, brought within the police power of the State any particular subject, the municipal authorities of the cities and towns have the power, under the usual general welfare clause found in municipal

charters, to deal with the subject, limited by the established rule that they can not deal with an act which is purely a violation of a State criminal statute.

(a) In deciding whether a municipal ordinance is invalid by reason of the existence of a State criminal statute on the same general subject, the courts look not merely to the concrete acts which may in actual cases furnish the basis for convictions, but they examine both the statute and the ordinance, with the view of ascertaining the theoretical evils to be remedied by each, and thus determine whether the gist of the offense in each is the same; if so, the ordinance, unless it has been enacted in pursuance of direct express authorization by the General Assembly, is void; otherwise, it is valid, provided, of course, the subject-matter of the ordinance is legitimately within the purview of the express or implicit police power with which the municipality has been clothed.

(b) There is a substantial distinction between the maintenance of a "blind tiger," or place where liquors are illegally sold on the sly, and the crime either of selling liquors illegally or of keeping them on hand in public places, or places of business. Municipal authorities, therefore, have the power, under the usual general welfare clause, to pass ordinances penalizing the maintenance of "blind tigers," notwithstanding the provisions of the State prohibition act of 1907, on the same general subject.

(c) Municipal authorities have the power, under the usual general welfare clause, to prohibit the keeping on hand of intoxicating liquors for the purpose of illegal sale, notwithstanding the provisions of the State prohibition act of 1907. The gist of the offense under such ordinances is materially different from the gist of any of the crimes created by the State statute.

2. A municipal ordinance which prohibits the keeping on hand of intoxicating liquors will not be declared void on the ground that it punishes mere intention disconnected from any overt act.

3. Under the amendment to the charter of the City of Macon, approved August 17, 1907 (Ga. Laws 1907, p. 786), the recorder has the power to sentence a person convicted of a violation of any of the ordinances of the city to pay a fine not exceeding $500, or to confinement in the city barracks for not more than sixty days, or to labor on the public works and streets of the city for not more than three months, and he may impose an alternative sentence, of labor on the public works and streets, for default in the payment of any fine imposed; but he can not impose the punishments cumulatively.

Argued October 7,—Decided October 21, 1908.

No. 1335. Habeas corpus, from city court of Macon—Judge Hodges. July 20, 1908.

*Charles H. Hall Jr.,* for plaintiff in error.

*Nottingham & McClellan,* contra.

No. 1358. Certiorari, from Bibb superior court—Judge Felton. August 1, 1908.

*Minter Wimberly, Jesse Harris, John R. Cooper,* for plaintiff in error.

*Charles H. Hall Jr.,* contra.

No. 1362. Habeas corpus, from city court of Macon—Judge Hodges. August 15, 1908.

*Charles H. Hall Jr.,* for plaintiff in error.

*W. D. McNeil,* contra.

No. 1376. Certiorari, from Chatham superior court—Judge Charlton. July 31, 1908.

*O'Connor, O'Byrne & Hartridge, E. H. Abrahams, Cann, Barrow & McIntire,* for plaintiff in error.

*Samuel B. Adams,* contra.

Nos. 1404, 1405. Habeas corpus, from city court of Macon— Judge Hodges. September 17, 1908.

*C. H. Hall Jr.,* for plaintiff in error.

*Jesse Harris,* contra.

POWELL, J. These six cases all present substantially the same points. The Mims, Lester, and Scarboro cases each arose by a. habeas corpus proceeding instituted against Callaway, superintendent of the city chain-gang at Macon. The prisoners had been convicted in the recorder's court of that city for a violation of what is known as the "blind-tiger" ordinance, which is in the following language (omitting formal parts): "It shall be unlawful for any person to keep a blind tiger, or keep for sale, barter, or exchange any vinous, spirituous, or intoxicating liquors within the corporate limits of the city of Macon." In each case the illegality of the imprisonment was asserted, on the grounds, that the sentence was imposed for a violation of a State law, that the mayor and council had no charter authority to pass the ordinance, that the municipal court was without jurisdiction to try the case, that the offense charged was a misdemeanor under the State law and therefore cognizable only in one of the State criminal courts. Of course, in these cases none of the evidence on which the convictions were based was material; the attack on the ordinance was direct. The trial judge held the ordinance invalid and sustained the habeas corpus. Callaway excepted.

Bashinski was convicted in the recorder's court of Macon for a violation of the same ordinance. He presented to the judge of

the superior court a petition for certiorari, and he also attacks the ordinance for the same reasons as were asserted in the habeas corpus case. He makes the point also that to allow the conviction to stand would subject him to double punishment for the same offense, the specific contention being that the same transaction constituted a violation of the State prohibition law. In the case of *Bashinski* v. *State,* this day decided, ante, 3, there is a description of Bashinski's place of business and rooms. In the present case the testimony went to show that subsequently to the raid and removal of the liquors referred to in that case, the police made another raid, and in what is called in that case the downstairs storage room, they found one whole cask and part of another cask of whisky in pint bottles. Proof was also made that he had gone to this room and sold a bottle of whisky taken from it. Bashinski denied this sale and insisted that while he had the liquor in the storage room it was in no wise connected with his place of business. The judge of the superior court refused to sanction the certiorari, and he excepts.

Schroeder and twenty-three others were convicted in the recorder's court of Savannah for violating the ordinance of that city which provides (omitting immaterial parts) : "It shall be unlawful for any person, firm or corporation to keep within the corporate limits of the City of Savannah . . for the purpose of illegal sale any alcoholic, spirituous, malt, or intoxicating liquors or intoxicating bitters or other drinks which, if drunk to excess, will produce intoxication." They brought the cases to the superior court by certiorari. A stipulation was entered into that the other cases should abide the final result in Schroeder's case. Upon the hearing of the certiorari, only two points were insisted upon: (1) that the ordinance is void because it in effect punishes an attempt alone; (2) that it is void because it undertakes to punish an act already covered by State legislation. The court overruled the certiorari, and Schroeder brings error.

1. Prior to January 1, 1908, there were in effect in this State several statutes directed against the sale of intoxicating liquors, but none against keeping them on hand. The general prohibition act of 1907, in addition to forbidding the manufacture and sale, also makes it unlawful for any and all persons "to keep . . at any . . public places, . . or keep on hand at their place of business, any intoxicating liquors." It is settled, beyond all pos-

sibility of dispute, that a municipal corporation, in the absence of express legislative authority, can not punish for an offense against the criminal laws of this State. *Strauss* v. *Waycross*, 97 *Ga.* 475, (25 S. E. 329); *Moran* v. *Atlanta*, 102 *Ga.* 840 (30 S. E. 298); *Hood* v. *Von Glahn*, 88 *Ga.* 413 (14 S. E. 564); *Braddy* v. *Milledgeville*, 74 *Ga.* 516 (58 Am. R. 443); *Mayor of Savannah* v. *Hussey*, 21 *Ga.* 80 (68 Am. D. 452); *Jenkins* v. *Thomasville*, 35 *Ga.* 141; *Adams* v. *Albany*, 29 *Ga.* 56; *Collins* v. *Hale*, 92 *Ga.* 411 (17 S. E. 622); *Littlejohn* v. *Stells*, 123 *Ga.* 427 (51 S. E. 390); *Penniston* v. *Newnan*, 117 *Ga.* 700 (45 S. E. 65); *Thrower* v. *Atlanta*, 124 *Ga.* 1 (52 S. E. 76, 1 L. R. A. (N. S.) 382, 110 Am. St. R. 147). It is equally well settled that prior to the enactment of the prohibition law of 1907, those cities, the charters of which contained the usual general welfare clause, might pass ordinances prohibiting the keeping on hand of intoxicating liquors for the purpose of illegal sale. *Sawyer* v. *Blakely*, 2 *Ga. App.* 161 (58 S. E. 399); *Sutton* v. *Washington*, 4 *Ga. App.* 30 (60 S. E. 811); *Mason* v. *Atlanta*, 77 *Ga.* 663; *Menken* v. *Atlanta*, 78 *Ga.* 668 (2 S. E. 559); *Mabra* v. *Atlanta*, 78 *Ga.* 679 (4 S. E. 154); *Hood* v. *Griffin*, 113 *Ga.* 190 (38 S. E. 409); *Osborne* v. *Marietta*, 118 *Ga.* 53 (44 S. E. 807); *Reese* v. *Newnan*, 120 *Ga.* 198 (47 S. E. 560); *Paulk* v. *Sycamore*, 104 *Ga.* 728 (31 S. E. 200); *Bagwell* v. *Lawrenceville*, 94 *Ga.* 654 (21 S. E. 903); *Brown* v. *Social Circle*, 105 *Ga.* 834 (32 S. E. 141); *Papworth* v. *Fitzgerald*, 106 *Ga.* 378 (32 S. E. 363); *Cunningham* v. *Griffin*, 107 *Ga.* 690 (33 S. E. 664); *Robinson* v. *Americus*, 121 *Ga.* 180 (48 S. E. 924); *Duren* v. *Stephens*, 126 *Ga.* 496 (54 S. E. 1045); *Rooney* v. *Augusta*, 117 *Ga.* 709 (45 S. E. 72); *Little* v. *Fort Valley*, 123 *Ga.* 503 (51 S. E. 501). So also ordinances forbidding the maintenance of blind-tigers, or places where liquors were kept or stored for illegal sale, were legitimate municipal enactments. *Bagwell* v. *Lawrenceville*, *Cunningham* v. *Griffin*, supra; *Osborne* v. *Marietta*, 118 *Ga.* 53 (44 S. E. 807). Under these ordinances, testimony as to the keeping of liquor and of one or more illegal sales thereof was deemed sufficient to authorize a conviction. *Sawyer* v. *Blakely*, *Mabra* v. *Atlanta*, *Rooney* v. *Augusta*, *Reese* v. *Newnan*, *Robinson* v. *Americus*, supra. The foundation of these decisions has been declared to rest upon the proposition that "whenever the General Assembly has by direct enactment, or by its settled public policy derivable

from the various statutes passed from time to time, brought within the police power of the State any particular subject, then the municipal authorities of a town or city would seem to have the power, under the usual general welfare clause in municipal charters, to deal with such subject by proper ordinance, limited only by the established rule that they can not deal with an act which is declared to be a violation of the criminal laws of the State." *Henderson* v. *Heyward,* 109 *Ga.* 379 (34 S. E. 592, 47 L. R. A. 366, 77 Am. St. R. 384). It may be noted, too, that although the ordinance be valid at the time of its adoption, if the General Assembly subsequently makes the identical offense which is punishable under the ordinance a crime against the State, the ordinance thereupon, ipso facto, loses its validity as to future transactions. *Jenkins* v. *Thomasville, 35 Ga.* 147; *Strauss* v. *Waycross, 97 Ga.* 475 (25 S. E. 329).

In cases where there has been an attempt to set aside an ordinance because of the existence of State statutes on the same subject, various tests have been proposed for the determination of whether there is such an identity between the crimes created by the State laws and the offenses created by the ordinances as to make the latter invalid. That the offender will be liable to prosecution under the State statute for something done in connection with the act by which the ordinance is violated or for an act which merely tends to make proof of some element of the municipal offense, creates no such identity; for example, that the offender, under an ordinance forbidding the keeping for the purpose of unlawful sale, will be subject to criminal prosecution for making the sale does not rob the municipality of authority to punish under the ordinance, although the purpose of the keeping be shown only by the fact that the illegal sale did take place. *Menken's* case, 78 *Ga.* 668 (2 S. E. 559). To quote the terse statement of Chief Justice Bleckley in the case just cited, "An offense committed against one jurisdiction can not be wiped out by committing another against another jurisdiction." If the offense recognized by the ordinance contains an "ingredient or concomitant" which is essential to the city's peace, health, or good order, and which is not covered by the State law, the ordinance is valid. *Mayor of Savannah* v. *Hussey, Hood* v. *Von Glahn, Strauss* v. *Waycross,* supra. It is recognized in *Hussey's* case that there are some kinds of conduct which,

though criminal, are not very pernicious in tendency when committed in thinly populated communities, but which, when committed in populous communities, such as cities and towns, take on an aggravation, and that this special mischief itself may furnish a legitimate basis for discriminating between the offense under the city ordinance and the crime under the statute, though both cover transactions nominally of the same nature. This principle has been recognized in several subsequent cases, was elaborated in *Hood* v. *Von Glahn,* and was adverted to by Judge Russell in the case of *Sutton* v. *Washington,* supra. "The act is single, its effect double; and for each effect there may properly, and without working injustice to the rights of the offender, be a separate remedy or penalty." Horr & Bemis on Mun. Pol. Ord. §89. "If the breach of the municipal by-law is not an offense against the criminal laws of the State, and neither includes nor is included in the latter," it is not invalid by reason of that law.

From a study of the cases, we deduce the proposition that in deciding whether a municipal ordinance is invalidated by the existence of a State criminal statute on the same general subject, we look not merely to the concrete acts which may in actual cases furnish the basis for convictions, but we examine both the statute and the ordinance with the view of ascertaining the theoretical evils to be remedied by each, and thus determine whether the gist of the offense in each is the same; if so, the ordinance, unless it has been enacted in pursuance of direct express authorization by the General Assembly, is void; otherwise it is valid, provided of course the subject-matter of the ordinance is legitimately within the purview of the implicit police power with which the municipal government has been clothed.

Preparation to commit an act differs in gist from the consummation. Thus, the carrying of deadly weapons differs from shooting at another, and even from murder itself; and by the same difference, ordinances forbidding the keeping of liquors for the purpose of unlawful sale have been distinguished from the sale itself in the large number of cases cited above. Likewise in *Karwisch* v. *Atlanta,* 44 *Ga.* 204, and in *Rothschild* v. *Darien,* 63 *Ga.* 503 (2), the action of the municipality in penalizing the preparative act of keeping open any store for the sale of merchandise on Sunday is differenced from the State's action in punishing the consumma-

tion, the carrying on of an ordinary calling on the Sabbath day. Closely cognate to this is the proposition that where some harm to the public peace, health, security, or comfort may result from the doing of certain acts or the maintenance of certain things, but the conduct does not come up to the test of criminality under the State law because of the lack of some ingredient prescribed by that law, the city by ordinance may legislate upon the situation; for example, in *Vason* v. *Augusta,* 38 *Ga.* 542, and in *Healey* v. *Atlanta,* 125 *Ga.* 736 (54 S. E. 749), it was held that the city might legally enact an ordinance against the maintenance of nuisances except in those cases where notice to abate has been served in accordance with the State law; for the reason that the State statute made it criminal to maintain a nuisance only after notice to abate. Similarly it was held in *Taylor* v. *Sandersville,* 118 *Ga.* 63 (44 S. E. 845), that the State vagrancy law did not prevent the enactment of a city ordinance against loitering in the streets. There is also a difference in gist between the doing of acts by which the commission of crime is encouraged or facilitated and the committing of the very crime itself; for example, the keeping of a gaming table or of a gaming house is not the same in substance as gaming; the renting or maintaining of a lewd house is not the same crime as fornication; so by this distinction, in the case of *Braddy* v. *Milledgeville,* supra, an ordinance against "street-walking," that is parading in the streets by lewd women, to the encouragement or advertisement of their means of livelihood, was upheld, although, of course, we have State statutes against the several forms of fornication, open lewdness, and of renting, keeping, or doing anything toward the maintenance of a lewd house. Akin to this is the principle recognized in *Purdy's* case, 68 *Ga.* 295, that there is a substantive difference between the opening of a tippling house on the Sabbath in violation of the statute and the permitting of persons to assemble at an opened tippling house on the same day. Much nicety of distinction is found among the cases of *Reich* v. *State,* 53 *Ga.* 73 (21 Am. R. 265), *Karwisch* v. *Atlanta,* 44 *Ga.* 204, *Kassell* v. *Savannah,* 109 *Ga.* 491 (35 S. E. 147), and *Hood* v. *Von Glahn,* 88 *Ga.* 405 (14 S. E. 564). In the *Reich* case a city ordinance of Columbus, which in direct terms penalized the opening of a tippling house on Sunday, was held to be the same in language, object, and substance with the State statute, and there-

fore void; in the *Karwisch* case it was held that notwithstanding the State forbade the opening on the Sabbath of tippling houses, that is, places where liquors were *drunk,* the city might by ordinance prohibit the keeping open on that day of places where commodities were *sold,* and that the ordinance was enforceable against the defendant, who opened his building where he *sold* liquors, as well as other goods, notwithstanding the place was also a tippling house by reason of the fact that liquors were drunk there as well as sold. In the *Kassell* case it was recognized that there was no State law directly prohibiting the selling of liquor by a licensed dealer on Sunday, that this result was reached only indirectly by the statute against the keeping open of barrooms and other tippling houses on Sunday, and that, therefore, a municipal ordinance which forbade the sale of liquor on Sunday was valid, but that it was, in the particular case, unenforceable against the defendant, because the selling of liquors was her regular vocation, and there was a penal statute inhibiting all persons from pursuing their ordinary calling on the Lord's day. In all these cases the city derived authority to pass the ordinances only through general welfare clauses in the respective city charters, but in *Von Glahn's* case direct express authority had been granted to the city "to pass all ordinances in relation to keeping open tippling houses on the Sabbath day," and such an ordinance was upheld. See, in the same connection, *Fichtenberg* v. *Atlanta,* 126 *Ga.* 62 (54 S. E. 933). As showing that an act may at one and the same time violate the dignity of the State and the peace of the municipality, so as to subject the offender to punishment in both jurisdictions, it is sufficient to refer to the recent case of *Fountain* v. *Fitzgerald,* 2 *Ga. App.* 713 (58 S. E. 1129), where the defendant pointed a gun at another in the public streets of the city, and the older cases of *McRae* v. *Americus,* 59 *Ga.* 168 (27 Am. R. 390), where the defendant fought in a public street, and *DeGraffenreid* v. *State,* 72 *Ga.* 212, where the defendant committed an assault and battery under similar circumstances.

Comparing, now, the ordinances sub judice with the State prohibition act of 1907, and applying the criteria deduced above, we have no hesitancy in saying that the State law does not cover the maintenance of "blind tigers," and that it was, and still is, competent for the City of Macon, under the general welfare clause of the

2

charter, to penalize the keeping of a "blind tiger." A "blind tiger" is a place where liquors are sold on the sly in violation of law; and is a common nuisance. *Legg* v. *Anderson,* 116 *Ga.* 404 (42 S. E. 720) ; *Cannon* v. *Merry,* 116 *Ga.* 294 (42 S. E. 274). For a collection of similar judicial definitions of what a "blind tiger" is, see Words & Phrases, vol. 1, p. 808. The keeping of a "blind tiger" differs from the ordinary illegal keeping or sale of liquor in the same respect that the maintenance of a gaming house or table differs from plain gambling, or the keeping of a lewd house differs from simple fornication or the parading of street-walkers. The gist of the offense of keeping a "blind tiger" consists neither in the keeping of the liquors nor in the sale of the liquors, though both of these may be essential evidentiary ingredients in the proof of the offense, but in the maintaining of a place where the State law as to liquors may be violated. The very keeping of such places is a severable menace to the peace and security of the inhabitants of the city, distinct from the violations which, through the acts committed therein, may ensue "to the laws of the State, the peace, dignity and good order thereof."

We have but little or no less hesitancy in holding that the provisions of the State prohibition act against keeping liquors in public places and in places of business do not cover the same ground as the city ordinances against the having or keeping of liquors on hand for the purpose of illegal sale—we may say for the purpose of sale, for all sales are illegal. Overt preparation to violate the State law is the gist of this municipal offense. It may be complete though no illegal sale ever takes place. It is not even necessary to show a consummation of the purpose by a sale, to convict under it. For 'instance, if it could be shown that the defendant collected the liquors, had marked prices on the packages, had taken out a United States license as a retail liquor dealer, had ' authorized his clerk to sell, who will say that the proof would not be sufficient to show the keeping and the purpose? This is in line with a suggestion of Justice Cobb in *Paulk* v. *Sycamore,* 104 *Ga.* 733 (31 S. E. 200). Note also the proof in the case of *Duren* v. *Thomasville,* 125 *Ga.* 1 (53 S. E. 814). Under the State statute, so far as keeping is concerned, the nature of the place, that it shall be public as contradistinguished from private, or shall be a place of business or trade as contradistinguished from a mere work-

shop or manufacturing plant, is all-important; under the ordinance the nature of the place is wholly immaterial and does not enter at all into the gist of the transaction. The distinction here is very close to that given recognition in the *Karwisch* case, supra. Proof of the facts necessary to convict under the city ordinance,—namely, that the liquor was kept, and that the purpose of the keeping was unlawful sale,—would not be sufficient to convict under the State statute. Proof of the facts necessary to convict under the State statute,—namely, that the liquor was kept and that the keeping was in a public place or place of business,—would not be sufficient to convict under the ordinance. In each case there is an essential element of the other offense lacking. This makes the offenses legally distinct. *Blair* v. *State*, 81 *Ga.* 629 (7 S. E. 855). In line with the reasoning of Judge Bleckley in *Menken's* case, supra, it may be said that the violator of the ordinance who has procured and is keeping the liquor for the purpose of illegal sale can not wipe out his transgression against the city's jurisdiction by carrying it into a place of business or a public place and thereby "committing another against another jurisdiction." Such ordinances do not cover any part of the ground covered by the State law, and the case of *Vason* v. *Augusta* and similar cases are wholly inapplicable.

We therefore hold, that, notwithstanding the general prohibition law of 1907, any town or city, in the charter of which is included an ordinary general welfare clause, may lawfully enact and enforce an ordinance prohibiting the maintaining of a "blind tiger" or the keeping of intoxicating liquors on hand for the purpose of sale; and that the ordinances sub judice are valid.

2. The contention that the ordinance is void because it punishes a mere intent without any overt act is untenable. The act of keeping is an overt act; and where it is coupled with an intent to keep, that "union or joint operation of act and intention" which the very definition of a crime or a misdemeanor includes (Penal Code, § 31) is present. The further ingredient that the purpose of the keeping shall be an unlawful sale is merely an added characteristic whereby the lawful and theoretically harmless keeping is distinguished from the unlawful and noxious keeping. As Judge Charlton says in the able opinion which he filed in connection with his order overruling the certiorari in the *Schroeder* case, "It does not punish the intent—it punishes the act as informed by the intent. A man turns

a door-knob and enters a dwelling. His act may be entirely innocent. He may do it through mistake, through implied acquiescence, from a dozen plausible motives. But if he turns the knob and enters the house with intent to steal, he commits burglary. An individual may keep all the liquor he desires in a place other than that wherein he transacts business or which is public, and no matter what his intent, he breaks no law of Georgia. He may keep it in his dwelling for his own consumption, and break neither State law nor municipal ordinance. If he keeps it in his dwelling with the intent to sell it, he violates the ordinance. Manifestly all the ingredients of crime are here present." .-

3. In *Bashinski's* case another point needs to be noticed. Upon his conviction in the recorder's court he was sentenced to pay a fine of $500, and in addition thereto to be confined at labor on the streets of Macon for ninety days and in the city barracks of Macon for sixty days. The city attorney relies upon section 7 of the act of 1907, amending the charter of Macon, as authority for this sentence (Ga. Laws 1907, p. 758). The authority there given is, "that the recorder of said city shall have power to impose fines for the violation of any law or ordinance of the city of Macon passed in accordance with its charter, to an amount not to exceed five hundred dollars, to imprison the offenders in the city barracks for the space of not more than sixty days, or at labor on the public works and streets of the city of Macon for not more than three months; and the said recorder shall have the power and authority to impose an alternative sentence at labor as herein prescribed in default of the payment of any fine imposed." We do not construe this as authorizing cumulative sentences. Any one of the three punishments may be imposed, but not all of them. If a fine is imposed, the sentence may include as an alternative a term at labor on the streets and public works of the city. While the judgment will be affirmed, direction will be given as to the correction of the sentence. *Pearson* v. *Wimbish*, 124 *Ga.* 713 (52 S. E. 751); *Littlejohn* v. *Stells*, 123 *Ga.* 427 (51 S. E. 390).

Upon a full consideration of all the points raised in all of the cases, it is our opinion that the judgments in the cases of *Callaway* v. *Mims* (No. 1335), *Callaway* v. *Lester* (No. 1362), *Callaway* v. *Scarboro* (No. 1404), and *Callaway* v. *Scarboro*, (No. 1405)— the habeas-corpus cases—be reversed; that the judgment in the case

of *Schroeder* v. *Mayor and Aldermen of Savannah* (No. 1376) be affirmed; that the judgment in the case of *Bashinski* v. *Mayor and Council of Macon* (No. 1358) be affirmed, with direction that the judge of the superior court, in taking action upon the remittitur from this court and in making the judgment of this court the judgment of that court, shall order and direct that the recorder of the city of Macon shall resentence the defendant in accordance with the views expressed in this opinion.