No. 12.—THE MAYOR AND ALDERMEN of the City of Savannah, and the Hamlets thereof, plaintiff in error, *vs.* CHRISTOPHER HUSSEY, defendant in error.

[1.] A grant to a municipal corporation, "to make, ordain and establish such by-laws, rules, regulations and ordinances as shall appear to them requisite and necessary, for the security, welfare and convenience of the city; and for preserving health, peace and good government within the same"—does not authorize the passage of an ordinance prescribing a different mode of trial and punishment for the same offence, *and in addition thereto*, to that provided by the State law.

*Certiorari*, from Chatham Superior Court, before the Honorable W. B. Flemming, presiding Judge of said Court. At January Term, 1856.

The defendant, Christopher Hussey, was convicted by the Mayor and Alderman's Court of the city of Savannah, of the offence of harboring and enticing seamen, in violation of an ordinance of said city. He excepted to said conviction, and by *certiorari*, brought up the proceedings and judgment of

said Court, before the Superior Court of Chatham county. The case was heard by Judge Fleming, who, after argument, delivered the following decision, declaring the conviction and judgment null and void, and ordering the same to be set aside.

CHRISTOPER HUSSEY,
*vs.*
THE MAYOR AND ALDERMEN of the city of Savannah. }   *Certiorari.*

The Act of 1849, enacts that the Police Court of the city of Savannah, be established and declared a Court of Record. That said Court shall have cognizance in the first instance of all offences against the laws of the State, touching said city, with power to inflict the punishments by fine and imprisonment prescribed by the existing laws and ordinances, or by those hereafter to be enacted or ordained, &c.

By the Constitution of the State of Georgia, "the Superior Court shall have exclusive jurisdiction in all criminal cases," with certain exceptions—among these exceptions is the following: "And except in all minor offences committed by free white persons, and which do not subject the offender or offenders to loss of life, limb or member, or to confinement in the penitentiary—in all such cases *Corporation Courts*, such as now exist, or may hereafter be constituted in any incorporated city, being a seaport town, and a port of entry, may be vested with jurisdiction under such rules and regulations as the Legislature may hereafter by law direct, which shall be tried in the county where the crime was committed."

Savannah being an incorporated city, a seaport town, and port of entry, the Legislature may, under the Constitution, give jurisdiction to the Corporation Courts, in the city of Savannah, of all minor offences, &c. It was argued that the Police Court, of the city of Savannah, is not a Corporation Court within the meaning of the Constitution. The Constitution says Corporation Courts—if the Police Court of the

city of Savannah be a Corporation Court, and I cannot doubt it, then it is embraced in the expression, "Corporation Courts." There is nothing in the Constitution to show that Corporation Courts of a *particular character* were intended. The fact that a Court is a Corporation Court, that it is in a city incorporated, that city being a seaport town, and port of entry, makes it a Court upon which the Legislature may confer jurisdiction of all minor offences, &c. But now the question arises, what jurisdiction has been conferred upon the Police Court of Savannah, by the Act of 1849? The Act says: "That said Court shall have cognizance in the first instance of all offences *against the laws of the State*, touching said city, &c." Harboring seaman is an offence against the *laws of the State*, touching said city. The Act of 1843, sec. 3d, enacts: "If any person or persons shall harbor, secrete, entertain, lodge or keep, or shall directly or indirectly, suffer to be harbored, secreted, entertained, lodged or kept, in or about his house or premises, any articled seaman or mariner, or apprentice, knowing the said seamen or mariner, or apprentice to have deserted from his ship or vessel, such person or persons, shall, on conviction, be fined in a sum of not more than five hundred dollars, or imprisoned, at the discretion of the Court." *Cobb* 32.

The offence against this law of the State, is *the offence* of which jurisdiction is given by the Act of 1849, to the Police Court of the city of Savannah. Now was the defendant tried for a *violation of this act?* No, he was not; the record shows that he was not. The Mayor in his return to the certiorari, says "that on the twenty-fifth day of August, 1855, Christopher C. Hussey was arraigned before the Mayor of the city of Savannah, and the Hamlets thereof, for the violation of our *ordinance*, &c." That ordinance is in conflict with the State law, on the same subject. By the State law, the offender shall, on conviction, be fined in a sum not exceeding *five hundred dollars*, nor less than *fifty dollars*. Now what authority have the Mayor and Aldermen, to alter,

amend, repeal, or in any way change a statute of the State of Georgia? Jurisdiction is given to try Hussey for an offence against the *State law*—this is surely no authority to the corporation to change the State law. Ordinances of the city conflicting with the Constitution, or *with the statutes of the State, are invalid.* The law of the State is the law of the corporation on this subject, and they cannot make another law for themselves. If the act for which Hussey was tried by the Mayor, is prohibited by the statute of 1843, then the ordinance is void, and every proceeding under it is illegal. The Act of 1843, does prohibit and punish the offence of harboring articled seaman. This being the general law of the State, all persons charged with this offence must be tried under it. No corporation can substitute an ordinance of its own in the place of the statute. Inasmuch, then, as Hussey was tried for a violation of the *ordinance,* and not for an offence against the *statute,* I think there was error.

But the more difficult question still remains: Can the Police Court of the city of Savannah try Hussey under the State law? Much of the argument before me, has been on that provision of our Constitution that "jury trial, as heretofore used in this State, shall remain inviolate." The question has been made whether at and before the adoption of the Constitution, jury trial for this offence had been used at all, and if not, then that the expression *"heretofore used,"* would not embrace this case. The question I think, may be decided without an appeal to the Constitution. What are the rights of the defendant under the *laws* of the land? In 1843, the Legislature passed an act punishing this offence. Under this act, the accused is to be put upon his trial precisely as he would be put on trial for any other offence against the laws of the State. In other words, in 1843 the accused had the right for this offence to be tried by a jury. When did they lose their right? I don't make the question (for it is not necessary) whether the Legislature could take this right from him. The Legislature has not, in my judgment,

attempted to do so. The mere fact of giving jurisdiction to a particular Court of an offence, does not take from the accused his rights under the law creating and defining his offence. If in 1843 the accused had the right to be tried by a jury, he has that right still, for the Act of 1843 has not been changed. It is now precisely as it was then. Jurisdiction to try the accused for violations of this statute is a jurisdiction to try him under the statute which he has violated. Under the statute the accused is entitled to a jury, but the Police Court of Savannah has no jury. The condition of things, then, is this: The Legislature has conferred jurisdiction on the Police Court of Savannah, but the Legislature has failed to make the provisions necessary to enable the Court to exercise the jurisdiction conferred. When the law was first passed, conferring upon the Judge of the city Court the power to hold special Courts for the trial of particular cases, no provision was made for a jury. The law in consequence remained a dead letter, until a subsequent act was passed, providing for a jury. Jurisdiction to try, is jurisdiction to try by jury, if at the time the jurisdiction is created the accused is entitled to a jury. If the act giving jurisdiction to the Police Court had in terms taken away the right of trial by jury, the question would have been as to the right of the Legislature to take it away. But that question is not before me, the Legislature not having done anything of the kind.

I am satisfied with this reasoning, because of the singular state of things that would exist if I am wrong. A man harboring an articled seaman in Savannah, may be tried by the Mayor without a jury. A man harboring an articled seaman in any county of the interior could not be tried, except by jury. They are both tried for the same offence; under the Act of 1843, the one has the advantage of being tried by a jury of his peers, the other is denied that privilege. Is the legislation of Georgia thus partial in its operation? But even in Savannah, he is entitled to a jury or not, according to circumstances over which he has neither choice nor control·

If he is brought up before the Police Court of the city of Savannah, he is tried by the Mayor; if he is brought up before the city Court, or before the Superior Court, he is tried by a jury. And whether tried by the one Court or the other, he is tried under the Act of 1843. If under that act he is entitled to a jury before *any Court*, he is entitled to a jury before *every Court* having jurisdiction of the offence—when jurisdiction is conferred, it is conferred in subordination to the rights of the accused, under the law for the violation of which he is put upon trial.

It is, therefore, ordered that the judgment below be, and the same is hereby, set aside and declared to be utterly null and void.

W. B. FLEMING,

15th May, 1856.                  Judge E. D. Georgia.

And now come the said The Mayor and Aldermen by Ward and Owens, and Lloyd and Owens, their Attorneys, within thirty days from the day when said decision was made, and except to the said decision and judgment of the Judge of the Superior Court upon the following grounds:

1st. That the said decision is contrary to law.

2d. Because his Honor erred in deciding that the ordinance of the city of Savannah, inflicting a penalty upon any one harboring or enticing seamen within the limits of said city, was illegal and void.

3d. Because his Honor erred in deciding that the defendant, Hussey, was entitled to a trial by jury.

4th. Because his Honor erred in deciding that the offence of harboring and enticing seamen, was one which required the verdict of a jury before any fine could be inflicted.

WARD & OWENS, for plaintiff in error.

HARDEN & LAWTON, for defendant in error.

*By the Court.*—LUMPKIN, J. delivering the opinion.

Can a municipal corporation legislate *criminaliter* upon a case fully covered by a State Law?

I am aware that decisions may be found to support the affirmative of the foregoing proposition. 1. *Wend* 237; 16 *Ala. Rep.* 400; 8 *Ib.* 515; *Bay. Rep.* 382; 11. *Mo.* '61; 12 *B. Munroe* 25. Without stopping to investigate the applicability of these precedents to the point under enquiry, I ask, what limit will you set to this power? If it may legislate by an ordinance for any one offence, may it not for every crime embraced within the penal code? Arson in a town or city is provided for by the public law; why not pass a by-law prescribing another mode of trial, and a different punishment for the same offence if committed within their limits? So of the crimes of forgery, counterfeiting, perjury, &c. Such I am sure, has not been the understanding of the country.

Under the general grant of power delegated by the Act of 1849, the city authorities may cover all cases not provided for by the paramount authorities of the State. Their code already fills a volume of some five hundred pages. All those ordinances regulating cemeteries, commons, markets, vehicles, fires, exhibitions, lamps, licenses, water-works, watch, police, city taxes, city officers, health, nuisances, &c., are legitimate and proper. Nay, I might go further, and concede, that where the State law defines an offence generally, and prescribes a punishment, without reference to the place where it is committed, in town or country, and the act when committed in the streets and public places of the city, would be attended with circumstances of aggravation, such as an affray, for instance, the corporate authorities with a view to suppress this special mischief, might probably provide against it by ordinance; because that ingredient or concomitant of the crime might not be supposed to be included in the State Law. And this is going quite far enough.

But in 1843, the Legislature saw fit to enact a law for the identical offence for which Christopher Hussey was tried, for the city of Savannah and other sea-port towns in Georgia. Does it not seem anomalous that under the general grant of power, which I have already quoted, that they intended to authorize this corporation to enact a penal ordinance, for the trial and punishment of this identical offence in Savannah?

Again, the Act of 1849, declares that the Police Court of Savannah shall have cognizance in the first instance, of all offences against the laws of this State, touching said city. Harboring seamen is an offence against the laws of the State, touching said city.

By the third section of the Act of 1843, *Cobb* 32, it is provided that "if any person or persons shall harbor, secrete, entertain, lodge or keep, or shall directly or indirectly suffer to be harbored, secreted, entertained, lodged or kept in and about his house or premises, any articled seaman or mariner or apprentice, knowing the said seaman, or mariner or apprentice to have deserted from his ship, or vessel, such person or persons shall, on conviction, be fined a sum of not more than five hundred dollars, or imprisoned at the discretion of the Court."

Why was not the defendant tried for a violation of this act, under the jurisdiction given to the Police Court in 1849, instead of for a violation of the city ordinance, which is in conflict with the State law upon the same subject? When the State law declares, that this offence in the city of Savannah, shall be tried in a particular way, and, on conviction, punished in a certain sum, what right have the Mayor and Aldermen to change or alter the statute? In the language of the presiding Judge, "the law of the State is the law of the corporation upon this subject; and they cannot make another law for themselves."

It is argued that the inhabitants of the city can be twice taxed, and why not twice punished for the same offence. That the Legislature can levy a tax for the State an aduthorize

the corporation to do the same for the city. The obvious reply is, that the tax is not twice levied for the same purpose. Suppose the general Tax Act should provide, that a certain tax in addition to the State tax, should be assessed on the citizens of Savannah, for city purposes; would it not require a most plain and palpable grant of power, to entitle the corporation to raise another tax for the same purpose? And that is the case which we are considering.

And this brings me to the only remaining view which I shall present on this subject. Suppose the State and the city may legislate for precisely the same offence, and no more nor no less, which I only do for the sake of the argument; may it not be fairly inferred, that it was not so intended in the present instance? This offence of harboring seamen, was created by the Colonial Act of 1766—*Prince* 755; which act expired by its own limitation; but was revived in 1785. In 1831, *Cobb* 623, the jurisdiction to try this offence was taken from the justices of the peace and given to the city authorities. In 1843, the Legislature passed an act defining and punishing this offence; under this act, the defendant was to be tried as all other persons are, accused of crime. The Act of 1843 expressly repeals the Act of 1766, as revived in 1785.

This means something. I am fully persuaded myself that the Legislature intended to assume the entire control and jurisdiction over this subject; and the mere fact of giving jurisdiction to the Police Court to try this offence as committed against the State, did not either authorize the ordinance, or deprive the accused of being tried by a jury of the country.

And I again gladly adopt the reasoning of the able Judge, who decided this case, upon this point. He remarks: "what a singular state of things would exist, were the contrary hypothesis true. A man harboring an articled seaman in Savannah, may be tried by the Mayor, without a jury, whereas, another citizen accused of the same offence in any county of the interior, cannot be tried, except by a jury, and even in Savannah, he is tried by a jury or not, according to cir-

cumstances over which he has neither choice nor control."

And the same observation may have been made as to the punishment. The fine is restricted to either one sum or another, accordingly as he may be tried before the Mayor, or the City, or Superior Court; yet the individual is the same as well as the offence, without any circumstance of aggravation or extenuation, as to the place of its commission, or in any other particular.

It is needless now to make the question, whether the Legislature could confer a duplicate power of punishing crimes upon a Corporation. I am satisfied the Legislature has not delegated any such doubtful power, to say the least of it, in the present case.

Judgment affirmed.

McDONALD, J. Concurring.

The defendant was prosecuted and convicted of the offence charged against him, before the Corporation Court of the City of Savannah for the violation of an ordinance of the city. The General Assembly of Georgia has passed an act, making it an offence punishable by fine, to harbor seamen. Instead of prosecuting the defendant for a violation of this State law, he was prosecuted, tried and convicted for the same offence, in violation of a city ordinance. The authorities of the city of Savannah cannot change, modify, or repeal a statute of the State. The legislative authority of the State is paramount to a like authority in any corporation. Even if the power existed in the Mayor and Aldermen of the city of Savannah, to legislate on this subject, it was in subordination to the higher legislative power existing in the General Assembly, and it could pass no ordinance coming in conflict in any manner with a statute.

But if the Mayor and Aldermen of the city of Savannah and the Hamlets thereof have power to legislate on this subject, whence did they derive it? In this State the people alone,

in which all legislative power primarily exists, can create a depository of that power. They can delegate that power, and they alone; and when they speak and confide it, and do not make it assignable to a particular body, there it abides. The Legislature cannot delegate its power. The people in their Constitution have declared where it shall exist, and by whom it shall be exercised. It is sufficient to say, that they have not authorized this great sovereign power of legislation to be partitioned and parceled out to counties or Corporation Courts, or any subordinate legislators. I do not hold that the Legislature cannot create a corporation, in virtue of its Constitutional power, and invest it with authority to pass *by-laws*. The ordinance, it is sufficient to say, under which the defendant was tried and convicted in the Corporation Court, is not a *by-law*.

It is unnecessary to consider other points which the record presents.

I concur in affirming the judgment of the Court below.

BENNING, J. dissenting.

There is a statute of the State which, among other things, says that, "If any person shall harbor," &c., "any articled seaman," "knowing the said seaman to have deserted from his ship," "such person shall," "on conviction, be fined in a sum of not more than five hundred dollars, or imprisonment at the discretion of the Court." This statute was passed in 1843. *Cobb's Dig.* 32.

In 1855, "the Mayor and Aldermen of the city of Savannah and the Hamlets thereof," made an ordinance for Savannah, prohibiting the same acts that had been thus prohibited by the statute, but under a different penalty.

This ordinance contained no provision for trial by jury.

The judgment of the Mayor and Aldermen of the city of Savannah that was reversed by the Court below, was a judgment rendered in execution of this ordinance.

Mayor and Aldermen of Savannah vs. Hussey.

It was not denied by defendant's counsel, that this judgment was right, if the ordinance was valid and the Mayor and Aldermen had cognizance of acts done in violation of the ordinance.

The Court below thought that the ordinance was not valid, and therefore it held that the judgment was wrong.

I think that the ordinance was valid, and, therefore, I think that the judgment was right. But in thus thinking, it is my fortune to differ, not only with the Court below, but with my associates of this Court. I proceed to give my reasons for my opinion.

1st. Was the ordinance valid?

2d. If it was, did the Mayor and Aldermen have cognizance of offences against it?

These are the two questions for my consideration.

The ordinance was valid if the Legislature *could* and *did* authorize the Mayor and Aldermen to make it. This is manifest.

That the Legislature had the power to authorize the Mayor and Aldermen to make the ordinance, I have no doubt.

Jury trial in offences of the kind in question, had not been in use at the time when the present Constitution was adopted, or at the time when any previous Constitution was adopted. *Princes Dig.* 755.

But I forbear to go into the question, whether the Legislature had not the *power* to authorize the Mayor and Aldermen to make such an ordinance as the one in question, because I do not know that either of the other members of the Court denies to the Legislature the power. I assume that the Legislature had the power.

Assuming this, the question is, *did* the Legislature authorize the Mayor and Aldermen to make the aforesaid ordinance?

The most that the Legislature ever did in this respect, it did by the third section of the Act of 1849, "amendatory of, and in addition to the various acts" previously "passed, in

reference to the city of Savannah." A part of that third section is as follows: " That the Mayor and Aldermen of the city of Savannah and the Hamlets thereof, be, and they are hereby vested with full power and authority, from time to time, to make, ordain and establish such by-laws, rules, regulations and ordinances as shall appear to them requisite and necessary for the security, welfare and convenience of the said city, or for preserving health, peace and good government, within the present or future limits of the same," &c. *Acts of* 1849, 83.

Did the Legislature, then, by this part of the third section of the act, authorize the Mayor and Aldermen to make the said ordinance ?

It being assumed, as it has been by me, that the Legislature had the *power* to authorize the Mayor and Aldermen to make the ordinance, the question, whether the Legislature *did* authorise them to make the ordinance, becomes simply a question of legislative *intention.* The question becomes this: Did the Legislature *intend,* by the aforesaid part of the third section of the statute, to authorize the Mayor and Aldermen to make the ordinance ?

Now, that part of the section declared in so many plain words, that the Mayor and Aldermen might make such ordinances as "should *appear to them* requisite and necessary for the security, welfare and convenience of the said city, or for preserving health, peace and good government" within the same.

If, therefore, the ordinance in question appeared to the Mayor and Aldermen requisite and necessary for the security, &c., of the city, that part of the section declared in so many plain words, that they might make the ordinance.

And that the ordinance did appear to them requisite and necessary for the security, &c., of the city, is to be presumed, at least *prima facie,* from the fact, that they made the ordinance.

Therefore, this part of the section declared in so many plain words that they might make the ordinance in question.

But if this part of the statute said this in plain words, we are bound to hold that it *intended* this, for, in the interpretation of a statute, the rule is, that we must first appeal to the words of the statute, and if they give a plain, unambiguous meaning, we must go no farther, but take the meaning they give, as the one *intended* by the statute. . .

If then we interpret by this rule, the conclusion to which we are forced to come, is, that the Legislature *intended* to authorize the Corporation to make the ordinance in question.

But, even if these words of the act were ambiguous, we should still have to come to the same conclusion; because the ninth section of the act is such that it would require us to do so. That section is in these words: "That as often as any doubts shall arise in the construction of this act, or any act heretofore passed, touching the city of Savannah, the same shall in all Courts of law and equity, and elsewhere, be construed and taken most favorably for said corporation."

Thus then, whether we go by the leading general rule for construing all statutes, or by this special rule for construing this statute, the result is the same, and that result is the conclusion, that the Legislature *intended* to confer the power to make the ordinance in question on the Mayor and Aldermen.

But if the Legislature *intended* to confer the power, it *did* confer the power, because, (according to my assumption) the Legislature had the power to confer the power.

My conclusion therefore is, that the Legislature authorized the Mayor and Aldermen to make the ordinance, and therefore that the ordinance was valid.

What is there to be urged against this conclusion? That evil would come of it? But a Court cannot set aside legislative intention, even although the Court may think that evil would come of enforcing such intention. Nor, when the *words* of the Legislature *plainly, unmistakeably,* indicate a particular legislative intention, is a Court at liberty to look

to the evil effects that would flow from the practical enforce-
ment of that intention, as evidence to show that the Legis-
lature could not have had the intention.

But can it be urged, with truth, against this conclusion,
that evil would come of it? What would come of it?
This: The ordinance and the statute would both be in force,
and therefore there would be two trials and two punishments
for the same act; or the ordinance would repeal the statute,
and there would be no trial or punishment for the act, except
under the ordinance. But it might require both ordinance
and statute to suppress the offence prohibited by them in com-
mon, and if it would require both, then that both were in
force would be a good and not an evil. And, for aught that
appears in the case, it would require both to suppress the of-
fence.

Or if the suppression of the offence would not require both,
it might be, that the one which it would require, would be
the ordinance rather than the statute. It might be, that
the statute would be found wholly ineffective to prevent the
offence. And for aught that appears in the case, this *was*
found true of the statute. In that event, if the ordinance
went any way towards suppressing the offence, the ordinance
was a good and not an evil.

This, I think, is all that can be said, as to what would di-
rectly and immediately come from admitting, as true, that the
ordinance was valid.

But, doubtless, an indirect or collateral result of admitting
this ordinance to be valid, would be the obligation to admit,
that the corporation might make valid ordinances on many
other subjects, on which there existed State legislation.

I cannot deny, that I think there is some danger in allow-
ing to a corporation power to make ordinances on subjects
on which there is general legislation.

But I thinkt tha, in the first place, the danger is not of a
very alarming kind; and in the second, that it is a danger

that, of necessity, has to be incurred to some extent, or all right to make any ordinance at all must be denied to a corporation.

[1.] The danger does not appear to me very alarming, because I see limits and checks to the exercise of the power by a corporation.

1st. The Constitution of the State. This gives *exclusive* jurisdiction to the Superior Courts, in all offences except "minor" ones that do not subject the offender to loss of life, limb, or liberty.

2d. The liability of the corporation to lose its charter for an *abuse* of any of its franchises or powers.

3d. In the case of a municipal corporation like the present: the frequency of the sessions of the Legislature, with its power to repeal, not merely any obnoxious ordinance, but the very charter itself.

The mode and the frequency of the elections of the Mayor and Aldermen, and the extent of their power to repeal ordinances.

Interest generally. It is the interest of the city, that no ordinance shall be made on any subject, if there already exists a sufficient statute on the same subject. And if any bad ordinance, of any sort, on any subject, shall be made, it will be the city that will be the chief sufferer. The Mayor and Aldermen represent the city, and they are composed of men of the city.

[2.] But say that the danger is greater than I take it to be, is it great enough to require us to deny a corporation the power to make any ordinance at all? For if we say, that a corporation is to make no ordinance on any subject on which there is a general law, we in effect say, that a corporation shall make no ordinance at all. There is not a subject on which there is not some general law. There is not an act that a man can do, that will not, by virtue of some general law, be either right or wrong. The whole field of legislation is occupied by general law; but especially that part of the

field which the ordinances of a municipal corporation would be likely to select.   On the subjects of the public peace, the public justice, the public security, the public morality, the public thoroughfares, on all subjects of police, there is general law of the most comprehensive kind.

And whether general law exists in the form of a statute, or in the form of the common law, can make no difference. A *law* in either form is equally the will of the Legislature.

But corporations from their very origin have been accustomed to make by-laws and ordinances on subjects on which there existed general law.   And they have ever been sustained in this practice by the Courts.   *See Ang. & Ames, on Corp.* 14 *Ala. R.* 400.

These things considered, then, I may say, that the argument *ab inconvenienti*, is not sufficient, in my opinion, to disturb the conclusion to which I came from the words of the statute; which conclusion was, that it was the intention of the Legislature to authorize the corporation to make such an ordinance as the one in question, and therefore that that ordinance was valid.

Assuming then that the ordinance was valid, the question is, did the corporation have cognizance of acts done in violation of the ordinance?

And the answer to that question must be, that the corporation did have.   The first section of the same act of 1849, (*p.* 83,) says, that the Police Court of the city of Savannah "shall have cognizance in the first instance of all offences against the laws of the State touching said city, including as well this law and the laws and ordinances hereafter to be enacted and ordained, as those which are now of force," &c. "*Provided*, nevertheless, that an appeal may be taken from any judgment or decision of said Court, (except a commitment for contempt,) to the Mayor and Aldermen of the city of Savannah and the Hamlets thereof, in Common Council assembled."

If the several conclusions to which I have come are true, as I think they are, it follows from them, that the decision of the Court below was wrong. And therefore it is that I dissent from the affirmance of that decision by this Court.