## THE PUNISHMENT OF ASSAULT AND BATTERY BY MUNICIPAL ORDINANCE.

[Circuit Court of Columbiana County.]

The City of Wellsville, Ohio, v. Patrick O'Connor, and The City of Wellsville, Ohio v. Harry Kirkbride.

Decided, April 10, 1903.

*Powers of Municipalities—The Duplication of Misdemeanors—Assault and Battery Not Punishable by Ordinance—Sections 1692 and 2108 Construed—Conformity to Section 1694, Limiting Ordinance to One Subject.*

1. An ordinance of the city of Wellsville, Ohio, contains fifteen sections, defining fifteen separate offenses against the city, all relating to one subject—the punishment of offenses against the city; and there is nothing in the ordinance upon any other subject, and nothing that is not clearly expressed in its title: "An ordinance to prohibit and punish certain offenses therein named, and for the more effectual preservation of peace and good order in the city of Wellsville." *Held:* That this ordinance conforms to the requirements of Section 1694, R. S., which provides that "No by-laws or ordinance shall contain more than one subject, which shall be clearly expressed in its title."

2. The power granted to a municipality by Section 1692, R. S., "to preserve the peace and good order," is limited by Section 2108, and does not include the power to provide by ordinance for the punishment of assault and battery.*

Burrows, J.; Cook, J., concurring; Laubie, J., dissenting.

O'Connor was convicted before the mayor of the city of Wellsville upon the charge of having committed the crime of assault and battery in violation of an ordinance of the city; was adjudged to pay a fine of fifty dollars and costs, and to stand committed to the work-house till fine and costs were paid. This judgment was reversed by the court of common pleas on the ground that the ordinance was invalid, and we are now called upon to review this judgment of the court of common pleas.

*To this holding Judge Laubie dissents. His dissenting opinion will be found immediately following the opinion of the majority of the court.

254    CIRCUIT COURT REPORTS—NEW SERIES.

City of Wellsville v. O'Connor and Kirkbride.   [Vol. I, N. S.

The ordinance is said to be invalid because the city was not authorized to create such offense, and because the ordinance does not conform to the requirements of Section 1694, Revised Statutes, which provides that "No by-law or ordinance shall contain more than one subject, which shall be clearly expressed in its title."

As to this second ground of complaint we are unanimous in the opinion that it is not well founded. The ordinance in question contains fifteen sections, defining fifteen separate offenses against the city. They all relate to one subject—the punishment of offenses against the city; and there is nothing in the ordinance upon any other subject, and nothing which is not clearly expressed in its title: "An ordinance to prohibit and punish certain offenses therein named, and for the more effectual preservation of peace and good order in the city of Wellsville, Ohio."

We do not think that any discussion of this question is required, as it has been settled, in principle at least, by the Supreme Court. *Ohio* v. *Covington,* 29 O. S., 102.

As to the other ground of objection to the ordinance—that it is not authorized by statute—we are not agreed; but in the opinion of the majority of the court this objection is well taken.

The only disagreement between members of the court is upon the proper construction to be placed upon certain provisions of the statute. There is no dispute as to the essential facts of the case. It is an undisputed fact that the City of Wellsville undertook by ordinance to prohibit and punish the crime of assault and battery, defining it in the precise language adopted by the Legislature in defining the offense; and that the authority of the city to enact the ordinance is given, if at all, by Section 1692, Par. 1, and Section 2108 of Revised Statutes.

Neither is there any disagreement as to the general rules of law applicable to the case. It is agreed that the Legislature can authorize a municipal corporation to prohibit and punish minor offenses, which are also punished by the state, whatever may be the law elsewhere. *Koch* v. *The State,* 53 O. S., 433.

The majority of the court think the following propositions are well settled by approved text-writers and courts: That the prohibition of crimes and offenses lies within the domain of police power; that the exercise of police power is an exclusive prerogative of the state; that a municipal corporation has no inherent power to enact by-laws or ordinances for punishment of offenses; that it has only

such powers as are clearly and expressly conferred upon it by the Legislature, or must necessarily be implied in order to carry into effect those expressly granted; that where the Legislature by general law has exercised its jurisdiction as to the punishment of an offense, there is a presumption of an intention to make its jurisdiction over such subject exclusive; and that in all cases where the grant is uncertain or doubtful the power must be denied.

These general propositions are fully established and illustrated by authority. 18 Am. & Eng. Ency., 739; *Ravenna v. Pennsylvania Co.*, 45 O. S., 118; *Markley v. Village*, 58 O. S., 430; Dillon's Mun. Corp. (2d Ed.), Secs. 301, 302; *St. Louis v. Telephone Co.*, 96 Mo., 623; *Minturn v. Larue*, 23 Howard (U. S.), 435.

We now come to the only disputed question in the case: Was the City of Wellsville authorized by statute to make the crime of assault and battery an offense against the city? This must be determined from the sections of the statute referred to, which, so far as pertinent, read as follows:

"Sec. 1692. In addition to the powers specifically granted in this title, and subject to the exceptions and limitations in other parts of it, cities and villages shall have the general powers enumerated in this section, and the council may provide by ordinance for the exercise and enforcement of the same.

"1. To prevent riots, gambling, noise, and disturbance, indecent and disorderly conduct or assemblages, and to preserve the peace and good order, and protect the property of the municipal corporation and its inhabitants."

"Sec. 2108. The council of a city or village shall have power to provide for the punishment of persons disturbing the good order and quiet of the corporation, by clamor and noise in the night season, by intoxication, drunkenness, fighting, using obscene or profane language in the streets or other public places, to the annoyance of the citizens, or otherwise violating the public peace by indecent and disorderly conduct, or by lewd and lascivious behavior."

These sections are found in the same title and relate to the same subject matter—the maintenance of peace and good order in municipal corporations.

It may be assumed at the outset of the discussion that the contention of the city is narrowed down to the construction of a single clause in Section 1692, Rev. Stat.

Counsel for the city claim that the authorization of the council "to preserve the peace and good order" of the corporation is an

256     CIRCUIT COURT REPORTS—NEW SERIES.

City of Wellsville v. O'Connor and Kirkbride.   [Vol. I, N. S.

adequate and clear grant of power for the enactment of this ordinance; and they base their claim solely upon this clause.

This claim of the city is controverted and denied; and the counter-claim is made that Section 2108 limits the power of the city to pass ordinances to preserve the public peace.

Since a city has no inherent power to make by-laws or ordinances it is incumbent upon the city to demonstrate that the requisite power to pass this ordinance is expressly given, or of necessity implied in the language used in this clause.

The full import of Section 1692 as applicable to this contention would read as follows:

Subject to the exceptions and limitations in other parts of this title, the council of cities and villages may provide by ordinance for the exercise and enforcement of the power "to preserve the peace and good order" of the municipal corporation.

This grant is not unlimited. Ordinances must be reasonable, and they must be appropriate to effect the purpose and objects for which they are authorized by the Legislature. It is certain that the purpose of this statute was to permit the council to provide by ordinance for the punishment of disorderly conduct which disturbs or annoys the citizens of the corporation. To give it larger scope would extend the power beyond the necessities of the case and make its limits subject, substantially, to the discretion of the council.

There seems to be some difference of opinion between counsel as to the meaning of the word peace, as used in this statute. It is a word in common use among the people, and it's meaning is well understood by them, and their understanding of its meaning is the same as that of lexicographers. The primary meaning according to Webster is, "A state of quiet or tranquility; freedom from disturbance or agitation; calm; repose." And Bouvier defines it as "The tranquility enjoyed by a political society, internally, by the good order which reigns among its members; a state of public order and decorum."

The argument by which it is proposed to sustain this ordinance is, that authority to preserve the peace is equivalent to authority to prevent breaches of the peace; that assault and battery is in all cases a constructive and in many cases is an actual breach of the peace; therefore, authority to preserve the peace is authority to make assault and battery an offense against the city. When this

conclusion is reached by this process of reasoning, the section under consideration will, in legal effect, have been amended so as to read as follows: That the council may provide by ordinance for the exercise and enforcement of the power to preserve the peace and good order of the city, and also to prevent breaches of the peace whether actual or constructive.

This argument, if valid, would authorize the council to punish by ordinance all offenders against the criminal laws of the state; for the violation of any criminal law is technically and constructively a breach of the peace. In the opinion of a majority of the court the peace mentioned in this section is not of the sort that passeth common understanding, and the power given and intended by the Legislature is the power to suppress and punish those minor acts of misconduct that are commonly known and spoken of as public annoyances and disorders.

But it is useless to speculate or dispute as to what construction may reasonably be placed upon this clause of Section 1692, for the reason that the Legislature has decided that question. The power to preserve the peace is given in general terms by Section 1692, and what the council may do to secure that end is definitely and unmistakably prescribed by Section 2108.

In express terms the powers granted by Section 1692 are subject to the limitations in other parts of the same title; and this matter of preserving the peace is as fully controlled by the latter section as though it had been stated in Section 1692 that the power therein granted to preserve the peace was subject to the provisions of Section 2108. If attention is directed to the objects sought and purposes declared in the statute as to these two sections, we are brought to the same conclusion.

Section 1692 with its forty separate paragraphs and as many separate grants of power, is, and by the title at the head of the chapter in which it stands purports to be, a simple enumeration of the powers granted to municipal corporations, while Section 2108 is, and purports by the head-note of Chapter 7 in which it stands to be, a full exposition of the power of the council as to the public peace. Nor is such specific restriction of power granted in Section 1692 by general language, at all peculiar or exceptional in the matter of preserving the public peace. In many of the forty subdivisions of Section 1692 unqualified power is given to the council, and other provisions of the statute limit and direct the manner

258    CIRCUIT COURT REPORTS—NEW SERIES.

City of Wellsville v. O'Connor and Kirkbride.    [Vol. I, N. S.

and extent of its exercise. The council by this section is authorized to appropriate land, to erect public buildings, to regulate ale, beer and porter-houses and shops, etc., etc.; and yet would any one contend that specific legislation directing how and when such power should be exercised could be disregarded by the council because in the enumeration of powers the grant is given without qualification or limit? We believe it is a well-settled rule of construction of statutes that all provisions relating to a given subject are to be considered and harmonized if possible and such construction adopted as will give effect to every part and provision. If Section 1692, Par. 1, is held to confer the power to pass any ordinance that may tend to preserve the peace or prevent an actual or technical breach of the peace, then Section 2108, that purports to mark out in plain terms the path the council must pursue to preserve the public peace, is without force or meaning. It is evident that the Legislature intended to cover the whole field of public peace regulation in the latter section and not some small portions of it; and if that has been done the attempt to extract from Section 1692 the authority contended for must fail technically as well as actually. If we are right in our position that the claimed authority must be found if at all in Section 2108, the controversy comes to an end; for this section can not, by any sort of microscopic analysis, be made to furnish authority to the council to make the crime of assault and battery a municipal offense.

It is a piece of legislation that carries the ear-marks of careful consideration. Its domain is outside of the criminal laws of the state and is a complete supplement of them in the matter of securing the peace and good order of the corporation. It embraces only such local and comparatively trifling misconduct as may cause disturbance and annoyance to citizens upon the streets or other public places; and allows the corporation to punish such misconduct althought it may be incidental to the commission of a greater offense made punishable by the state.

The concluding "otherwise" clause must, by a familiar rule, be construed as limited to acts of disturbance and annoyance similar in circumstance and character to those precedently enumerated; and it must likewise be so limited because "indecent and disorderly conduct or lewd and lascivious behavior" import such public disturbance and annoyance.

By insisting that this case should be governed and decided by the provisions of Section 2108 we do not concede that the disputed power is conferred by Section 1692; but on the contrary, we maintain that if Section 2108 were repealed or annulled by judicial construction or otherwise, the City of Wellsville would have no power to pass and enforce this ordinance for the following reasons:

1. Where an indefinite grant of power is given, such as "to provide for the general welfare," "to make by-laws for the good government of the place," etc., authority is not conferred upon the corporation "to make an ordinance punishing an act—for example, an assault and battery—which is made punishable as a criminal offense by the laws of the state." 2 Dillon's Mun. Corp., Sec. 302.

2. In some of our sister states the right of the Legislature to authorize municipal corporations to put on their ordinance books the criminal laws enacted by the state, and thereby cause certain offenders to be twice punished for the same criminal act is denied. *Savannah* v. *Hussey*, 21 Ga., 80.

In this state, it seems, the Legislature may in its discretion allow municipalities to duplicate all misdemeanors that are not required to be prosecuted by indictment.

Whatever disagreement may exist as to the propriety or legality of this duplication of punishment, it can not be denied that its necessity is doubtful and that in practice it may be made vexatious and oppressive.

Certainly, the fact that assault and battery is punished by the state precludes the city from claiming the right to enact this ordinance on the ground of necessity. We venture the opinion that whenever a claim is made in behalf of a corporation for the exercise of superfluous and unnecessary power it should be supported by a legislative grant so explicit in its terms as to leave no reasonable doubt or question.

3. The argument that to preserve the peace is to prevent breaches of the peace, and that assault and battery is always in law, if not in fact, a breach of the peace, carried to its legitimate conclusion would give a municipal corporation the power to copy and pass into ordinances the whole body of state misdemeanors. We are not called upon to discuss other provisions of Section 1692 in which power is given to prevent riots and gambling, etc., and which can have no bearing upon the question under discussion.

260    CIRCUIT COURT REPORTS—NEW SERIES.

City of Wellsville v. O'Connor and Kirkbride.  [Vol. I, N. S.

If the Legislature had granted the power to prevent assaults and batteries in Section 1692 and had not elsewhere in the statute limited the exercise of the power thus conferred, then a different question would be presented, and one analogous, perhaps, to the grant of power to prevent riots, etc.

But power to prevent assaults and batteries is not contained in the grant to prevent riots, and if any inference is to be drawn from the mention of riots and the omission of assaults and batteries in this section, it would be that power was given to punish the former and not given to punish the latter.

In this connection the inquiry is suggested why separate mention should be made of riots in this section. They are always actual as well as constructive breaches of the peace. Evidently the Legislature did not have in mind the logic of the argument advanced on behalf of the city, or did not subscribe to its soundness.

After a somewhat thorough examination of the question the majority of the court are well persuaded that the ordinance ought to be held to be void, and the judgment of the court of common pleas is therefore affirmed.

*F. L. Wells,* for the plaintiff in error.

*W. F. Lones* and *Charles Boyd,* for defendants in error.


LAUBIE, J., dissenting.

A strike of the workmen of the Wellsville Plate & Sheet Iron Co.'s plant was in progress, which the prosecuting witnesses in these cases, who were workmen in the plant, would not join and on the occasion in question, were for that reason, assaulted and beaten by a body of the strikers, of whom the defendants were a part, on one of the public streets of the city—a small riot.

The defendant in each case was arrested, convicted and fined for violation of the first section of an ordinance entitled, "An ordinance to prohibit and punish certain offenses therein named, and for the more effectual preservation of peace and good order in the city of Wellsville, Ohio."

The penalty prescribed was a fine only.

If acts of sufficient gravity to constitute assault and battery can be said to be a violation of good order or a breach of the peace, the ordinance in question must be upheld, as in such cases it is entirely a matter of discretion in the council whether to enact such ordi-

nance or not. The question of the *necessity* for such an ordinance is therefore not presented. The question here is whether the ordinance is embraced within the scope of the subject of the general power given in the statute, and not whether the authority to enact such ordinance is implied as necessary to carry into effect some special named power. That the defendants had each been guilty of an actual and not a so-called constructive, assault and battery, and had thereby committed a breach of the peace, could not be and was not disputed. Under the general power conferred, the act prohibited under the name of assault and battery must be, and shown to be, of such disorderly character as to amount to a breach of the peace; and as the acts in question were of that character the validity of the ordinance can not be questioned, and the right to punish such acts denied and taken away, because there may be other acts which are constructively brought within the definition of assault and battery which may not be of such disorderly character as to amount to a breach of the peace.

The question here is not to be controlled by the rules applied in determining the constitutionality of statutes.

Here the only question is, was the act called assault and battery of such disorderly character as to constitute a breach of the peace? If it was not, no offense was committed against the municipality—the ordinance was not violated. The ordinance has application only to acts violative of the peace and good order of the city; and is, therefore, valid as against any act of assault and battery of such character as to cause such violation.

But any assault and battery is a disorderly act, a breach of the peace, whether it be called a constructive or actual assault and battery, and therefore comes within the scope of the subjects named in the statute in question, and is covered by the ordinance.

In the absence of a given definition of a constructive assault and battery, I assume is meant such as are created by the use of violent language, and the laying on of hands in a menacing manner, without any actual beating of the person.

What is a breach of the peace? In 1 Bou. Law Dic. (Rawles Ed.), 262, it is defined to be "A violation of public order;" an "act of public indecorum." Lexicographers define indecorum as "An impropriety of behavior which violates the established rules of civility, especially in public."

262    CIRCUIT COURT REPORTS—NEW SERIES.

City of Wellsville v. O'Connor and Kirkbride.   [Vol. I, N. S.

I am therefore at a loss to see why every assault and battery is not a violation of good order, an act of public indecorum, and therefore a breach of the peace.

It has even been held that the use of violent language on one's own premises toward a person lawfully there is also a breach of the peace. 1 Bou. Law Dic., *supra* (50 Mo. App., 262). Indeed, the wording of the statute in question is broad enough to include all acts that tend to disturb good order, or that amount to disorderly conduct, and consequently must include any act of assault and battery.

This, of itself, should settle the question in favor of the validity of this ordinance.

But this conclusion is rejected on the ground that, if a constructive assault and battery is to be held to be a breach of the peace, it would authorize the council to prescribe and punish *all* acts made criminal by the laws of the state, as the violation of any criminal statute is constructively a breach of the peace.

What has that to do with the question here?

If it has any bearing upon the question in this case, and the Legislature *could* delegate such authority, how could the courts interfere to annul it?

But the court (majority) has itself amply refuted the proposition in saying that in this state the Legislature may, in its discretion, allow municipalities to duplicate all misdemeanors that are not required to be prosecuted by indictment; having reference, perhaps, to Section 10 of Art. I of the Constitution, which provides that "except  *  *  *  in case of petit larceny and other inferior offenses, no person shall be held to answer for a capital or otherwise infamous crime unless on presentment or indictment of a grand jury;" and to the case of *Dillingham* v. *State,* 5 O. S., 289, where it is held that "this (excepted) class was intended to embrace all offenses for which a punishment less than imprisonment in the penitentiary is provided." So that there is a constitutional inhibition against the proposition, even if the violations of municipal ordinances are to be regarded as crimes or criminal offenses, which they are not.

It may be true that the words granting such general powers, as used in said Subdivision 1 of Section 1692, in and of themselves, may be broad and comprehensive enough to include, as claimed,

murder and robbery; but it is manifest from the context, and the provisions of many other sections of the same title, that the Legislature intended to and has legitimately limited the authority in such matters in municipalities strictly within the domain of police power; and the right to prescribe and punish capital crimes, or any other felony, does not rest upon, nor is it legitimately included within, the domain of police power.

Section 1863 of the Revised Statutes, provides that the council, in addition to fines and penalties, may provide for the penalty of imprisonment not exceeding thirty days, for the violation of an ordinance of the municipality.

If the violations of municipal ordinances are to be considered crimes or offenses the same as violations of state laws, how is it possible to conceive of an intention to grant final jurisdiction in murder and robbery, where the power to punish is restricted to a small fine and thirty days imprisonment? That no such intention existed is also manifest from a consideration of Sections 1816 to 1823 of the same title.

The proper construction of said Subdivision 1 of Section 1692 leads to the same result.

By the established rule of construction where a general power in a statute is immediately preceded by specifically named powers, such general power is restricted to those of a similar nature to the ones specifically named; and in this instance the general power granted to provide by ordinance against acts which disturb the "peace and good order" of the municipality must be restricted to those which are kindred to and similar in their nature to those specifically named, as riots and gambling, and those legitimately included within the prohibition against "noise, and disturbance, indecent and disorderly conduct or assemblages," which are all only of the grade of misdemeanors.

And the same thing is to be said of the construction to be placed on the concluding general power specified in Section 2108 of said Title 12.

The rule that statutes conferring powers upon municipal corporations must be strictly construed is not applied to cases like this.

Where the powers granted are general instead of specific, and relate to matters involving the peace, good order and morals of such communities, a liberal construction is placed upon them, and

264   CIRCUIT COURT REPORTS—NEW SERIES.

City of Wellsville v. O'Connor and Kirkbride.   [Vol. I, N. S.

technicalities are not resorted to in order to defeat them.   In such cases courts declare the ordinances invalid only when they are constrained to so hold by the strict letter of the law.   As was said by Judge Scott in *Canton* v. *Nist*, 9 O. S., 439:

"We are constrained to so hold however sensible we may be of the duty to sustain municipal corporations in the legitimate exercise of the powers conferred upon them for the preservation of order, and improvement of morals, within their jurisdiction."

In such cases, the ordinance to be invalid must either be entirely outside of the scope of the subject and purpose of such general power, or be unreasonable in itself, or in conflict with the laws and policy of the state; neither of which objections can be successfully raised against the ordinance in question.

The claim that the power to prohibit and punish the act of assault and battery, not having been expressly conferred, can not be implied from the general power given, as assault and battery is a statutory offense, and that if the Legislature intended to include such statutory offense it would have said so expressly, as it did in respect to riots, in my opinion is untenable.   This claim seems to me not only to run counter to both principle and authority, but to be opposed to the plain letter of the statute.   It is manifest from the subdivisions of said Section 1692, as well as from the provisions of said Section 2108, and from the general provisions of said Title 12, that the Legislature intended to and did confer upon municipalities the power to punish all immoral and disorderly acts, unless such acts were permitted, or recognized as lawful by the laws of the state.

But the act prohibited by the ordinance in question was not thereby made a crime, a criminal act or offense, precisely of the same kind and grade as that of assault and battery under the state laws; and to hold such ordinance valid would not legalize the punishment of an individual twice for the same crime, and such duplication can not be presumed to have been within the legislative intent under such general power.

The Supreme Court, in *Koch* v. *The State*, 33 O. S., 433, followed what it said was "the general course of decisions," and held that a "former conviction before a mayor for the violation of an ordinance is not a bar to the prosecution of an information charging the same act as a violation of a statute;" referring to *Bloom-*

*field* v. *Trimble,* 54 Iowa, 399; *Minnesota* v. *Lee,* 29 Minn., 445; *Robbins* v. *The People,* 93 Ill., 175, and Cooley's Const. Lim., 239.

But it was not held in *Koch* v. *State,* and it is a mistake to assume that an act done in violation of an ordinance, is a crime, a where imprisonment is no part of the punishment, is a crime, a criminal act or offense as at common law, or a public offense under the Constitution or laws of the state. Indeed, the court must have held precisely the reverse, as the reverse was what the courts held in the cases upon which our Supreme Court based its decision. Acts violative of municipal by-laws or ordinances are ordinarily loosely spoken of as offenses, but they are not crimes or criminal acts or offenses within the legal meaning of these terms, at least if imprisonment is no part of the penalty, although the same acts are made crimes under state laws, but are merely *quasi* criminal. They are not properly crimes or offenses against the public, but violations of mere local police regulations for the violation of which a fine may be imposed and collected by action in the name of the municipality, and consequently a conviction under the ordinance is no bar to a conviction under the state law. They are not identically the same crime or offense; and to be a bar, the former conviction must have been for the same identical crime or offense, as well as for the same act.

A prosecution under such an ordinance is not a criminal prosecution, but an action civil in character to recover a fine for disobedience of a police regulation purely local in its character.

The state punishes the offender for the unlawful act of violence to the person of another; and as an offense against the dignity of the state, and the punishment is largely measured by the extent of the injury to the person of the party assaulted; while the municipality punishes, and is authorized to punish, solely for the violation of good order and peace of the municipality, and the punishment is measured by the extent of the disturbance, and not at all by the extent of the injury to the person assaulted; so that the offenses, if both acts are such, are entirely distinct, and not the same, although arising out of the same act.

It was upon these grounds that the court in *Koch* v. *The State of Ohio, supra,* held as heretofore stated, because it simply declared that in such cases the conviction under the ordinance was no bar, under "the general course of decisions" as established by the au-

266    CIRCUIT COURT REPORTS—NEW SERIES.

City of Wellsville v. O'Connor and Kirkbride.    [Vol. I, N. S.

thorities cited. The court therefore adopted the doctrine laid down and declared in those authorities; and a reference to them will show that they hold there could be no bar in such cases upon the grounds I have stated—that such ordinances are mere local police regulations, the violation of which is not a criminal offense, but at most only *quasi* criminal.

In one of these authorities, *Minnesota* v. *Lee*, 29 Minn., 445, which was a case of keeping a house of ill-fame, the whole question was gone over thoroughly and well, and the authorities referred to, and it was held that there could be no bar for the reasons I have stated, and that therefore even the constitutional right of trial by jury was not invaded by a summary trial and conviction by the police court.

In a subsequent case in that state, *Mankat* v. *Arnold*, 36 Minn., 64, the question was again considered, and it was again held that "offenses against ordinances for the preservation of the peace, good order * * * of the community are not generally construed to be criminal cases in the proper sense of the term 'criminal,' and prosecutions therefor are not 'criminal prosecutions' within the meaning of the Constitution, which refers to prosecutions for offenses essentially criminal under the general laws of the state."

In *Inwood* v. *The State*, 42 O. S., 189, substantially the same doctrine is announced, and it was held that municipal ordinances against petty offenses, where imprisonment is not a part of the punishment, are mere police regulations, and prosecutions thereunder are only *quasi* criminal.

In *Markle* v. *Akron*, 14 O., 587, Markle was convicted by the mayor for retailing intoxicating liquors to be drunk where sold under an ordinance prohibiting the same.

Judge Wood, in disposing of the case said that "debt" was the only appropriate remedy in such cases, and that "debt is, in fact, the only form of action recognized by the principle of the common law for the recovery of fines, penalties and forfeitures."

In *State* v. *Rouch*, 47 O. S., 480, this question was directly passed upon, and in announcing the holding Judge Spear said:

"It is true that in two instances, *Larney* v. *Cleveland*, 34 O. S., 599, and *Village of Shelby* v. *Boenaur*, 40 O. S., 253, this court has, inadvertently, as we think, spoken of such offenses as violations of criminal law. But they are not, strictly speaking, crimes, nor are the proceedings criminal proceedings; they are *quasi* criminal

only. The offender does not offend against the dignity of the state; his offense is only against the municipal corporation whose ordinance he has violated."

After referring to the holding in *Markle* v. *Akron, supra,* he continues:

"That this has been the understanding of our law-makers, the general current of our legislation attests. The legal machinery for the trial and punishment of violations of ordinances has been provided in the municipal, and not in the criminal code. * * * Offenses against the state are divided into felonies and misdemeanors—the former being such as are punishable by death or imprisonment in the penitentiary, and all others are misdemeanors. But to be either, the offense must be against the state. A violation of an ordinance not being an offense against the state, does not come within either class."

And I may add, that in Section 1864, Revised Statutes, the Legislature has provided that fines for the violation of ordinances may be recovered by civil action in the name of the municipality before any justice of the peace or other competent court, and directs what shall be sufficient to allege against the offender.

Not being a criminal offense, there can be no duplication of punishment, and this argument against the validity of the ordinance falls to the ground.

But however this may be, the authority to pass and enforce this ordinance is conferred by the general powers vested in municipalities by said Subdivision 1 of said Section 1692; and the fact that assault and battery was and is an offense under state laws in no manner affects the question.

Under a general power relative to a particular subject, when not otherwise restricted, municipalities may by ordinance prescribe punishment for all acts which, in any manner, relate to or affect that subject. For instance, under the power granted to preserve the peace and good order, it is universally held that they may provide against and punish any act amounting to a misdemeanor under state laws, which will in any manner disturb the peace and good order of the community; and this without declaring, or alleging, that it was contrary to the peace and good order of the municipality, it being sufficient, if the act alleged, in itself, would naturally disturb peace and good order. So that the ordinance in question, prescribing punishment for assaulting and beating another, was

268 CIRCUIT COURT REPORTS—NEW SERIES.

City of Wellsville v. O'Connor and Kirkbride. [Vol. I, N. S.

authorized under the general power to preserve the peace and good order of the city, as the natural result of such an act was to break the peace and good order of the city, which it must be proved to have done in order to convict.

This subject is treated of largely in Dillon on Mun. Corp., Sections 326-341, original numbers, and cases are cited which seem to have far less connection with the subject of the general power than the case at bar. For instance, in Section 333 is cited approvingly the case of *State* v. *Morrill*, 37 Me., 320, where it was held that a city, under a power granted to pass ordinances for the good order of the city, might impose a penalty for mutilating or destroying any ornamental tree in any of the streets of such city; and this, too, although the state law made the malicious and wanton destruction of trees grown for ornament or use a crime.

This question is also fully discussed in one of the cases relied upon by our Supreme Court in *Koch* v. *State, supra,* viz., *Bloomfield* v. *Trimble,* 54 Iowa, 399, and the principle as I have declared it fully upheld.

In that case Trimble was arrested, tried before the mayor and found guilty of the violation of an ordinance which provided that "if any person shall be found in a state of intoxication, he shall be deemed guilty of a misdemeanor."

The act in question was also made an offense against the state by statute. Section 456 of the Iowa Code is almost identical in language with said Subdivision 1 of Section 1692 of our Revised Statutes; and Section 482 authorized municipalities to provide by ordinances, not inconsistent with the laws of the state, for the "order, comfort and convenience of the inhabitants thereof." In upholding this ordinance the court said:

"It is true the statute does not especially provide that a municipal corporation may punish persons for intoxication or drunkenness. But there are many subjects of municipal control which are not expressed and particularly named in the sections of the Code conferring powers upon cities and towns * * * *. We entertain no doubt that under these provisions a town or city may, by ordinance, punish for drunkenness. * * * * To hold that the council, when it enacted this ordinance exceeded its powers, and was mistaken as to the effect of drunkenness in the incorporation, and that it does not affect the public peace and order, and the comfort and convenience of the inhabitants, would, it seems to us, be contrary to the common experience of mankind."

In *Mayor, etc., of Mobile* v. *Allair, supra,* Allair was arrested, tried before the mayor, convicted and fined for an assault and battery committed within the limits of the city in violation of an ordinance imposing a fine "for an assault and battery within the limits of the city," and the same act was an offense under the state laws. The power to pass such ordinance was based solely upon the words of the statute granting the power to pass all such resolutions, by-laws and ordinances, as the mayor and aldermen "may deem requisite and necessary for the good government of said city, not contravening the laws of the state."

The court, in an elaborate opinion, upheld the validity of the ordinance, and declared:

"The prompt suppression of riots, affrays, assaults and battery, and other kindred offenses, and the punishment of the offenders, is certainly requisite for the good government of the city."

A similar case, with similar holding, is *Williamson* v. *Commonwealth,* 4 B. Mon. (Ky.), 146.

The general doctrine on the subject under consideration has been fully recognized and enforced in this state in numerous decisions.

In *Cincinnati* v. *Rice,* 15 O., 225, the defendant was fined by the mayor for keeping open a store on Sunday and selling goods contrary to the ordinance forbidding such acts "or common labor" on the first day of the week. The defendant was a Jew, and was within the exemption provided in the ordinance in favor of those who religiously observed the seventh day of the week as the Sabbath, but the mayor overruled his defense in that regard. The ordinance was authorized solely under a general power similar to the power herein, and was almost precisely in the same words as the statute of the state against such practices; and yet the courts upheld the ordinance, and reversed the conviction solely on the ground that the defendant was within the exemption. In the Supreme Court, in the concluding paragraph of his opinion, Judge Hitchcock says:

"Besides, by giving the ordinance this construction, which seems to me to be the proper one, that ordinance is made perfectly unobjectionable, as there can be no pretence that it is contrary to a statute law of the state."

In *Canton* v. *Nist,* 9 O. S., *supra,* the Supreme Court declared a similar ordinance void, not upon the ground that the general

270    CIRCUIT COURT REPORTS—NEW SERIES.

City of Wellsville v. O'Connor and Kirkbride.  [Vol. I, N. S.

and indefinite power under which the ordinance was adopted did not authorize it, as there was a statute making the same acts offenses against the state, but because the ordinance was inconsistent with such statute law in that it did not exempt those who conscientiously observe the seventh day of the week as the Sabbath. The significant remark of Judge Scott, in disposing of the case, I have already quoted.

In *City of Piqua* v. *Zimmerlin,* 35 O. S., 507, the question was whether the power given by statute to municipalities, in general language, to regulate ale, beer and porter-houses and shops, authorized an ordinance prohibiting the keeping open of any such house or shop on the Sabbath, where ale, beer, or porter was habitually sold or furnished to be drunk, and it was held that power to pass such ordinance was thus conferred "notwithstanding the statutes of the state made it unlawful for any tavern keeper or other person to sell or barter on Sunday any spiritous liquors," and that it was in "complete accordance with the statutes, and with the object sought to be accomplished."

In *Koch* v. *State, supra,* substantially the same result was arrived at. While the facts do not appear in the report of the case as published, the record discloses that the conviction before the mayor was for keeping a saloon open on Sunday, and the Supreme Court based its holding, without explanation, on discrimination, upon the reasoning and result in the case of *Bloomfield* v. *Trimble, supra,* and others, as heretofore shown.

See also 11 O. S., 550, and 39 O. S., 651.

I know of no case in the reports of our Supreme Court where an ordinance was held void because the act or offense provided against was a misdemeanor under state laws.

It is only where ordinances have been found to be inconsistent with the state laws that they have been held void—never because they were consistent with, or duplicates, of such laws.

As to the holding that if such power to punish assault and battery is conferred by the provisions of said Subdivision 1 of Section 1692, it is taken away by the provisions of Section 2108, which the majority hold is a limitation upon the powers granted in said Subdivision 1, of Section 1693, I am also compelled to dissent from.

The part of Section 1692 referred to, preceding said Subdivision 1, reads:

"1692.   In addition to the powers specifically granted in this title, and subject to the exceptions and limitations in other parts of it, cities and villages shall have the general powers enumerated in this section, and the council may provide by ordinance for the exercise and enforcement of the same."

I am at a loss to see how anything in Section 2108 puts an exception to, or limitation on, the power granted in said Subdivision 1 of Section 1692 to prevent disorderly conduct, and the violation of peace and good order in the municipality. ·Certainly no limitation is expressed.   It seems to be one of the specific grants of powers to which those in Section 1692 are declared to be in addition.

If Section 2108 ·was intended to limit the powers ·conferred by Section 1692, how is it as to riots and gambling?  Instead of limiting the power as to them, ·it would simply wipe out the power altogether.   An exception or limitation to a power is a modification of it merely, restricting its exercise in some manner, or to some extent, as distinguished from its entire destruction or elimination; yet here if no act of disorderly conduct or breach of the peace can be prohibited by ordinance save those specifically named in said Section 2108, it would entirely eliminate the power to quell riots, the worst kind of disorderly conduct and breach of the peace, and gambling, and compel the assumption, that after expressly giving the power in the one section, the Legislature deliberately proceeded in the next to take it away.  As I have heretofore shown, other sections of said Title 12 do put a limitation upon the general power granted in said Subdivision 1 of Section 1692, in that the act ordained against can not be of a higher grade than a common law misdemeanor.

But the powers granted in Section 1692, as we have seen, are declared to be "in addition to the powers specifically granted in this title," and seem to be more of an addition to those granted in Section 2108 than said Section 2108 is a limitation as to the other, especially when it is considered that in Section 2108, according to its chapter heading, the power delegated relates solely to "vagrants and dissolute persons," while the power delegated in Section 1692 is general, and relates to all classes of persons.

The Legislature having, in Section 2108, specifically provided for the preservation of the public peace as against the acts of

vagrants and dissolute persons in certain particulars, gave, in addition thereto, in Section 1692, a general power as to all acts of all persons involving the peace and good order, or affecting the safety of the property of the municipality, and its inhabitants; and specifically as to riots and gambling (although they would be embraced under the general power named), with authority to enforce the same by ordinance, and we do not have to look to said Section 2108, therefore, or to any other section for *that* authority. What the council may do to secure the peace and good order of the municipality is as definitely and unmistakably prescribed in Section 1692, as it is in 2108. Each section provides that the council may enforce the powers granted by ordinance.

Indeed, as to assault and battery, Section 2108 confers the power to provide against it, as fully as does Subdivision 1 of Section 1692.

That section (2108) gives the power to provide for the punishment of persons disturbing the good order and quiet of the corporation, by "intoxication, drunkenness, fighting, or otherwise violating the public peace by indecent and disorderly conduct."

By the use of the words "or *otherwise* violating the public peace," "intoxication, drunkenness and fighting," are declared to be acts of disorderly conduct violative of the public peace, as in fact they are; and if they are, certainly assault and battery is. It must be regarded as an act of disorderly conduct equally with intoxication, drunkenness or fighting. It seems to me to be impossible to maintain that assault and battery is not an act of disorderly conduct. If assault and battery is a disorderly act of such character as violates the public peace—a kindred act to fighting—then why is it not included in the general power thus conferred by said Section 2108? It seems to me that it is, and that either of the sections referred to confers the power to punish acts known as assault and battery.